659 P.2d 45

James E. DUTRA, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Grecian Spa Fitness Center, Respondent Employer,

St. Paul Fire & Marine Companies, Respondent Carrier.

No. 1 CA-IC 2594.

Court of Appeals of Arizona, Division 1, Department C.

May 18, 1982.

Rehearing Denied July 2, 1982.

Review Granted Sept. 9, 1982.

Charles M. Wilmer, P.C. by Charles M. Wilmer, Phoenix, for petitioner.

James A. Overholt, Acting Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Jones, Teilborg, Sanders, Haga & Parks, P.C. by J. Russell Skelton, Phoenix, for respondents employer and carrier.

OPINION

EUBANK, Presiding Judge.

The petitioner-employee worked as a weight lifting trainer at the respondent Grecian Health Spa. While demonstrating a curling exercise, he injured the tendons in his left arm. After extensive medical testing and therapy, it was determined that petitioner had suffered a severe loss of strength in his arm, but a relatively minor loss of motion. Based on these results, the respondent carrier issued a notice of claim status terminating petitioner's temporary benefits as of April 5, 1980, with a 4% scheduled permanent partial disability rating of the left arm. See A.R.S. § 23–1044(B)(21).

The notice was protested and formal hearings were held. Dr. Bruce Mallin testified on behalf of the respondent carrier as to petitioner's loss of motion. Dr. Mallin rated this physical impairment under the A.M.A. guidelines as "not more" than 5%.[1] In the March 13, 1981 award, the administrative law judge included a finding of 5% scheduled permanent partial disability of the left arm based on the 5% rating of permanent impairment under the A.M.A. guides, and this finding is undisputed. In addition, he found an additional 5% scheduled permanent partial disability of the left arm based on petitioner's loss of strength in that arm. This latter finding is the basis for this appeal.

The finding was based upon the deposition of petitioner's treating physician, James Garrick, M.D., a board-certified orthopedic surgeon specializing in athletic injuries. By use of a sophisticated Cybex II machine, Dr. Garrick tested petitioner's loss of strength. The results revealed that petitioner had suffered a 0–75% loss of strength in his left arm; that is, a 75% loss at maximum output, gradually descending to a 0% loss of strength when the arm was at rest.

Since petitioner was employed as a weight lifter, he contends that a 75% loss of strength at maximum output was a 75% "loss of use" of his arm under A.R.S. § 23–1044(B)(21). Respondents contend that any impairment rating for loss of strength should not be based exclusively on petitioner's occupation as a weight lifter under A.R.S. § 23–1044(B)(21). In any event, respondents contend that the 75% rating is unacceptable, both because it is not founded on the A.M.A. guides and because it fails to recognize the many "uses" of the arm at less than maximum output.

■ It is apparent from the record of this case that petitioner has suffered a permanent impairment as that term is defined in Arizona law. See Smith v. Industrial Commission, 113 Ariz. 304, 305 n. 1, 552 P.2d 1198, 1199 (1976). We further hold that loss of strength may constitute a loss of "use" under A.R.S. § 23–1044(B)(21) for which compensation must be paid. The difficulty we perceive is in rating the loss-of-strength impairment for purposes of determining permanent partial scheduled disability.

■ Notwithstanding A.C.R.R. R4–13–113(D), an impairment not ratable under the A.M.A. guides may be rated by other criteria Adams v. Industrial Commission, 113 Ariz. 294, 552 P.2d 764 (1976). The rating need not be based upon published guidelines, but must be based on competent medical evidence. Cavco v. Industrial Commission, 129 Ariz. 429, 631 P.2d 1087 (1981). Nevertheless, in the scheduled injury area, the percentage rating of impairment is all important, since the legislature has translated the percentage into a fixed rate of permanent disability. A.R.S. § 23–1044(B); Smith v. Industrial Commission, 113 Ariz. 304, 307 n. 4, 552 P.2d 1198, 1201 (1976).

1. A.C.R.R. R4–13–113(D) requires a physician to rate any functional impairment according to the American Medical Association "Guides to the Evaluation of Permanent Impairment." The ratings in the guides are specifically related to loss of motion at a joint, or amputation.

Regarding the 0–75% rating of impairment, Dr. Garrick was deposed and on cross-examination testified as follows:

Q. Doctor, with regard to the rating of his disability that you have given in terms of loss of strength, I think you made it very clear that that rating is relative to what you characterize his employment to be as a spa instructor and weight lifter; is that correct?

A. Yes.

Q. I believe you indicated that if he were employed in a capacity which did not require that type of activity with the arms such as, say, bell man on a cable car, or say, as an attorney or some other type of desk job, then from a functional standpoint he would have no disability in that arm; is that correct?

A. If he weren't required to use the arm, then he wouldn't have any disability; that's correct.

Q. I mean, when I say "not required to use the arm at all" he could do simple tasks like write and dress himself and drive a car under normal circumstances and all those things, couldn't he?

A. He can certainly write and dress himself and so on. I think there are things in daily living that would give him some problems.

Q. Which might cause him a little pain?

A. Yes, sir.

This testimony is typical of the entire deposition; Dr. Garrick did not offer a precise percentage rating of functional impairment for everyday use of the arm, but rather rated the impairment relative to the specific amount of weight petitioner could lift. Therefore, viewing petitioner's impairment in light of his occupation as a professional weight lifter, Dr. Garrick concluded that petitioner had suffered the maximum impairment rating of 75%.

■ Although we can find no persuasive authority on the issue, we must agree with respondents that scheduled injuries under A.R.S. § 23–1044(B)(21) are to be viewed in terms of abstract physical impairment, and not related to any specific occupation. The very nature of the statute compels this conclusion. Thus, we are of the opinion that Dr. Garrick's testimony presented a factual question for resolution by the administrative law judge. Where the loss of strength varies between 0–75% depending on the weight to be lifted, what percentage most accurately reflects the actual loss of use suffered by petitioner? Like any question of fact, this issue must be resolved by the fact finder, the administrative law judge.

■ The administrative law judge herein considered all medical and lay testimony in reaching his conclusion of the additional 5% loss of use. He had an opportunity to observe petitioner and assess his loss of use on a firsthand basis. The 5% finding was within the range of impairment offered by Dr. Garrick. As a reviewing court, we are unable to say that the determination of the additional 5% scheduled permanent partial disability for loss of strength was erroneous as a matter of law, especially since petitioner was unable to provide the trier of fact with a definite rating of impairment for purposes of A.R.S. § 23–1044(B)(21).

■ By resolution of this case in this manner, we do not mean to imply that the administrative law judge has unlimited discretion to determine a rating of impairment. Where the medical testimony is specific in the impairment rating, the administrative law judge must accept it as fact or reject it in favor of other competent testimony. However, where the medical testimony is not specific as in this case, and related to a specific occupation not properly considered under A.R.S. § 23–1044(B)(21), the administrative law judge may properly determine the appropriate percentage.

Viewing the facts in a light most favorable to sustaining the award herein, the determination of the administrative law judge must be affirmed.

HAIRE and FROEB, JJ., concur.