659 P.2d 18

James E. DUTRA, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Grecian Spa Fitness Center, Respondent Employer,

St. Paul Fire & Marine Companies, Respondent Carrier.

No. 16120–PR.

Supreme Court of Arizona, In Banc.

Jan. 6, 1983.

Rehearing Denied Jan. 23, 1983.

Charles M. Wilmer, P.C. by Charles M. Wilmer, Phoenix, for petitioner.

James A. Overholt, Acting Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Jones, Teilborg, Sanders, Haga & Parks, P.C. by J. Russell Skelton, Phoenix, for respondents employer and carrier.

CAMERON, Justice.

We granted James E. Dutra's petition for review of an opinion of the Court of Appeals, Division One, which affirmed the Industrial Commission's award of scheduled benefits under A.R.S. § 23–1044(B)(21). We have jurisdiction pursuant to A.R.S. § 12–120.24, and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer only one question on appeal: Must scheduled disabilities under our workmen's compensation statute be rated exclusively in terms of physical functional impairment, without reference to the occupation in which the claimant is engaged at the time of his injury?

The facts necessary for determining this issue are the following. The appellant began work as a weight training instructor at the respondent Grecian Health Spa in September 1978. He had earned degrees in physical education, psychology and health education, and had previously taught and coached baseball and football at the high school and college levels prior to taking the health spa job. Less than two months into his employment, appellant injured the tendons in his left arm while demonstrating a barbell exercise known as "curling." Following extensive medical testing and therapy, it was determined that appellant had

suffered a severe loss of strength in his arm, but very little loss of motion. Surgery was recommended in possible amelioration of the condition, but appellant elected not to undergo surgery.

Based on the medical test results, the respondent carrier sent a notice of claim status terminating the appellant's temporary benefits as of 5 April 1980 with a 4% scheduled permanent partial disability of the left arm. The appellant protested the notice and formal hearings were held. The administrative law judge found a 5% scheduled permanent partial disability of the left arm based on a 5% rating of permanent impairment under the American Medical Association's "Guides to the Evaluation of Permanent Impairment." The administrative law judge found an additional 5% scheduled permanent partial disability of the left arm based on the loss of strength causally related to the November 1978 injury. This finding was based in part on deposition testimony by the appellant's treating physician that his patient had suffered loss of strength in the 0–75% range—that is, no loss when the arm was at rest, and a peak loss of 75% of full normal strength when maximum exertion was demanded of the arm's musculature. The 5% disability attributed to loss of strength was challenged on appeal.

The Court of Appeals, Division One, held that loss of strength constitutes a compensable scheduled loss of use under A.R.S. § 23–1044(B)(21). The court noted our finding in *Adams v. Industrial Commission,* 113 Ariz. 294, 295, 552 P.2d 764, 765 (1976) that the A.M.A. guides are not the exclusive source for rating physical impairment, and that such rating can be based on competent medical evidence. *Dutra v. Industrial Commission, et al.,* 135 Ariz. 86, 659 P.2d 45 (1982); *accord Cavco Industries v. Industrial Commission,* 129 Ariz. 429, 432, 631 P.2d 1087, 1090 (1981). The Court of Appeals also held that the administrative law judge's determination of an additional 5% permanent partial disability from loss of strength, based on lay as well as medical

testimony and personal observation of the petitioner, was supported by the evidence. Finally the court held that scheduled injuries under A.R.S. § 23–1044(B)(21) are to be viewed in terms of abstract physical impairment unrelated to a specific occupation.

We disagree with the Court of Appeals that loss of use in scheduled injuries must be determined in the abstract without consideration of the job at the time of the injury. Our statute provides for compensation as follows:

"21. For the partial loss of use of a finger, toe, arm, hand, foot, leg, or partial loss of sight or hearing, fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, * * *." A.R.S. § 23–1044(B)(21).

It is to be noted that as to scheduled injuries, the payment for loss of use is based exclusively on the amount of wages the workman was receiving at the time of the injury, A.R.S. § 23–1044(B), and for which premiums were paid, whereas in an unscheduled award, the payment is based upon the difference between the wage at the time of the injury and the workman's earning capacity after the injury. A.R.S. § 23–1044(C). Also, in scheduled injuries, payments are for a limited period of time, A.R.S. § 23–1044(B), and not for the period of disability as is the case in unscheduled injuries as provided in A.R.S. § 23–1044(C). A third distinction is that although an unscheduled award may take into account other employment available to the workman in his disabled condition, *Wiedmaier v. Industrial Commission,* 121 Ariz. 127, 128–29, 589 P.2d 1, 2–3 (1978), a scheduled injury is compensated without regard to what other employment may be available. A.R.S. § 23–1044(B); *see Alsbrooks v. Industrial Commission,* 118 Ariz. 480, 481–82, 578 P.2d 159, 160–61 (1978).

■ Compensation then for a scheduled injury is made solely with reference to the salary the workman was receiving at the time of the injury. We disagree with the Court of Appeals that "scheduled injuries under A.R.S. § 23–1044(B)(21) are to be viewed in terms of abstract physical impairment, and not related to any specific occupation." *Dutra,* supra. Admittedly, as to unscheduled injuries, the law is contrary:

"The word 'disability' as used in our Compensation Act does not mean disablement to perform the particular work "petitioner was doing at the time of his injury, but refers to injuries which result in impairment of earning power generally. It applies to earning power and not to inability to do a certain class of work." *Savich v. Industrial Commission,* 39 Ariz. 266, 270, 5 P.2d 779, 780 (1931) (citations omitted).

And no compensation for unscheduled injuries is allowed unless a loss of earning power is shown. *Williams v. Industrial Commission,* 73 Ariz. 57, 59, 237 P.2d 471, 473 (1951); *Matlock v. Industrial Commission,* 70 Ariz. 25, 29, 215 P.2d 612, 614 (1950); *Oliver v. Industrial Commission,* 14 Ariz. App. 200, 202, 481 P.2d 886, 888 (1971).

■ We hold, however, that as to scheduled injuries, compensation is based upon the job the claimant was performing at the time of the injury. Inability to perform the claimant's particular job at the time of his injury must be considered in determining the extent of the workman's disability. As noted by Professor Larson, see Larson on Workmen's Compensation Law, § 58.13(e), p. 10–204, in discussing the view that scheduled injuries are to be considered without relation to specific occupation:

"The trouble with these cases is that they assume that 'loss of use' can be mechanically measured in relation to use by some theoretical claimant. They assume, in other words, that the concept of 'loss of use' of the hand has some fixed uniform content as to all human beings, regardless of age, sex, skill, or anything else. But the very word 'use' immediately raises the question: use for what? For swatting files? For a karate chop? For threading a needle? For holding a pencil? These are all 'uses,' after all." Larson on Workmen's Compensation Law, supra.

The reasoning of the Court of Appeals of Oregon is worthy of adoption. In *Boyce v. Sambo's Restaurant, Inc.*, 44 Or.App. 305, 605 P.2d 1213 (1980), the claimant's thumb was injured while working in a restaurant. He subsequently filed a claim based on loss of use of the hand for the thumb injury. The worker's compensation referee found that though the claimant retained an excellent range of motion in the thumb, when the exertion of strength was required, the claimant's entire left hand was virtually of no use. The Oregon court stated that there was no absolute correlation between physical impairment and loss of use on which compensation is based, and sustained the referee's conclusion that a greater percentage of loss of use was justified where the physical injury inhibits the claimant in performing his former employment. *See Boyce v. Sambo's Restaurant, Inc.,* supra.

Our holding today appears to be contrary to two previous cases of this court:

" * * * The term 'partial loss of use' (as set forth in A.R.S. § 23–1044 subd. B(21)) refers to a percentage of physical functional disability rather than to a proportional loss of capability of the injured employee to perform the work previously done by him." *Egbert v. Industrial Commission*, 93 Ariz. 33, 35, 378 P.2d 482, 483 (1963), citing *Weiss v. Industrial Commission*, 87 Ariz. 21, 347 P.2d 578 (1959).

Insofar as these cases hold that in scheduled injuries the disability to be compensated is the physical disability generally, rather than the disability to perform the work the workman was engaged in at the time of the injury, they are by this opinion overruled.

Award set aside.

GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice, dissenting:

The use of statutory schedules to compensate injured workmen has been a system much criticized by legal scholars. Despite such learned objection, the system remains an active part of the workman compensation law of this state.

The issue presented by this case is not new to this court. Over twenty years ago in a case raising the identical point urged in this case, this court held that the term "partial loss of use" in the context of A.R.S. § 23–1044(B)(21) refers to a percentage of physical functional disability and not partial loss of capability to do the job formerly done by the injured workman. *Weiss v. Industrial Commission*, 87 Ariz. 21, 347 P.2d 578 (1959). This court in *Weiss* pointed out that since the inception of the act in 1925 the uniform interpretation of the statutory language had been that the statutory language "partial loss of use" meant a percentage of physical functional disability. It is understandable that the Court of Appeals felt compelled to follow an interpretation which has been the law of this state for over fifty years.

The wise counsel offered by the court in *Weiss* bears repeating:

It must be understood that what the petitioner prays for is not an initial construction of an ambiguous statutory term, but rather a change in the law as it has been understood and applied for more than three decades. . . . As we see it, the question is not what meaning can be put on the statutory words, but whether this Court by judicial fiat should make a change in the law under the guise of a statutory construction. Such would be an unwarranted encroachment upon the province of the legislature.

*Id.*, 87 Ariz. at 24–25, 347 P.2d at 580–581.

Has the court today ignored the sound principles of *Weiss* to achieve a result?

I dissent from the opinion of the court. I would approve the opinion of the Court of Appeals.