722 P.2d 234

**W.A. KRUEGER COMPANY,**
Petitioner Employer,

**Fidelity & Casualty Company of New York c/o Underwriters Adjusting Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Christopher J. Puma,**
Respondent Employee.

No. 18539–PR.

Supreme Court of Arizona,
En Banc.

June 10, 1986.

Lewis and Roca by Merton E. Marks, Phoenix, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for Indus. Com'n.

R.Y. Thrasher, Phoenix, for respondent Puma.

HAYS, Justice.

This petition for review arises from an opinion of the Court of Appeals affirming an award to Christopher J. Puma (respondent) by the Arizona Industrial Commission. *W. A. Krueger Co. and Fidelity & Casualty Company of New York v. Industrial Commission of Arizona and Christopher J. Puma*, 1 CA–IC 3261 (filed March 19, 1986). We accepted review and have jurisdiction pursuant to art. 6, § 5(3) of the Arizona Constitution, A.R.S. § 12–120.24, and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.

The facts are undisputed. On August 22, 1982, respondent herniated a cervical disc in a work-related accident. His claim for worker's compensation benefits was accepted and he was seen by several physicians. One of these physicians, Dr. Paul LaPrade, a neurosurgeon, subsequently performed a diskectomy to decompress the left C–7 nerve. Dr. LaPrade testified that, from a medical viewpoint, the surgery was successful, despite some complaints of continued pain from respondent.

Based on his examinations of respondent, it was Dr. LaPrade's opinion in late March, 1983, that respondent could return to normal work within two months. Dr. LaPrade informed respondent of his opinion and shortly thereafter, respondent began to

complain of severe and disabling neck pain. Dr. LaPrade ran a battery of tests to determine the cause of this pain. The test results, however, were all normal.

In June, 1983, Dr. LaPrade was shown surveillance films of respondent performing a variety of physical activities. Dr. LaPrade testified that in his opinion respondent "performed these duties without any apparent difficulty, and he moved his neck in what I had interpreted to be a normal range of motion...." He further stated that the film was in direct contradiction to how respondent behaved during his examinations: "Well, during the office visits he would barely move his head in any direction at all; just minimal movement to the right and to the left, ... five to ten degrees."

After viewing these films, Dr. LaPrade discharged respondent without permanent disability. Based on this action, the insurance carrier issued a notice of claim status closing the claim. Respondent protested this decision and a hearing was held.

At this hearing, Dr. LaPrade testified that respondent's physical condition was "stationary." He stated that although the AMA Guides provided a 5% permanent impairment for the surgical removal of a disc, without residual effects, the Guides were simply that—guides. It was his opinion that, in this case, the recommended rating was too liberal. Another surgeon, Dr. Joseph Gimble, also examined respondent and testified that he was unable to diagnose the cause of respondent's discomfort. Although he deferred to Dr. LaPrade's rating of respondent's impairment, he agreed with Dr. LaPrade's characterization of the AMA Guides as merely guidelines.

Following the hearing, the administrative law judge (ALJ) issued an award closing the claim without permanent impairment. This ALJ subsequently resigned, however, and respondent's request for administrative review was assigned to another ALJ. On review, the new ALJ concluded that, despite the evidence, the AMA Guides must be followed when applicable. Accordingly, he issued an award based on a 5% perma-

nent impairment. The Court of Appeals affirmed the award. Petitioner contends that such an interpretation of the role that the AMA Guides play in rating an impairment is too restrictive. We agree.

Shortly after accepting jurisdiction in the present case, this court rendered its opinion in *Gomez v. Industrial Commission,* 148 Ariz. 565, 716 P.2d 22 (1986). In *Gomez,* a worker with a rated 30% permanent partial loss of use of his left leg claimed that he was entitled to a scheduled 100% disability because he could no longer perform his prior employment. Unlike the present case, however, all the doctors agreed that the AMA Guides did, in fact, provide an accurate measure of the claimant's impairment. In finding that the ALJ did not err in basing his award on the 30% impairment provided by the Guides, this court stated:

The Commission has adopted the AMA *Guides* for rating the percentage of impairment when there has been a partial loss of use rather than the complete loss of a member. *See* A.R.S. § 23–1044(B)(21). When they are applicable and "truly reflect the claimant's loss", they may be used as the sole indicator or factor to be considered in fixing the percentage of impaired function. Where the ALJ finds that the *Guides* do not provide a fair, accurate measure of the degree of impairment, he or she must turn to other factors. Any relevant factors, except those prohibited by statute (such as loss of earning capacity) may be considered. Effect on job performance is one such factor. Evidence regarding such factors may come from experts, from the literature, lay witnesses or any other competent source that would assist the ALJ in determining the actual percentage of partial loss of use. Use of these factors fulfills the statutory mandate (citations omitted).

148 Ariz. at 152, 716 P.2d at 26.

▮ In the present case, the situation is the mirror image of that presented in *Gomez.* In *Gomez,* the ALJ was asked to make an award based on an impairment rating higher than that recommended by

the AMA Guides. Here, however, the ALJ was urged to adopt an impairment rating *lower* than that provided for by the Guides. Despite this difference, we believe *Gomez* is dispositive of the issue. The AMA Guides are not to be blindly applied regardless of a claimant's actual physical condition. Rather, their purpose is to serve as a *guideline* in rating an impairment and are valid when the stated percentage "truly reflects the claimant's loss." *Gomez v. Industrial Commission*, 148 Ariz. at 152, 716 P.2d at 26, citing *Adams v. Industrial Commission*, 113 Ariz. 294, 295, 552 P.2d 764, 765 (1976). Where however, the evidence establishes that the Guides do not "truly reflect the claimant's loss" or where the medical evidence is in conflict, the ALJ may use his discretion and make findings independent of the Guides' recommendations.

We believe respondent's situation is just such a case. At the original hearing, the ALJ heard expert testimony from respondent's treating physicians, Drs. LaPrade and Gimble. This testimony was uncontradicted and consisted of their belief that respondent had no permanent impairment. In other words, the Guides did not "truly reflect" respondent's loss—it overstated the loss. Additionally, there was evidence which, if believed, would indicate that respondent himself was not accurately representing his impairment. Based on the testimony, his examination of the surveillance films and his own observations of both physicians and respondent at the hearing, the original ALJ ruled that respondent had no permanent physical impairment. We find that under such circumstances, the actions of the ALJ in rejecting the 5% permanent impairment recommended by the AMA guides was proper.

Accordingly, the opinion of the Court of Appeals is vacated. The Decision Upon Review and Award, dated February 28, 1984, is set aside and the Decision Upon Hearing, dated December 28, 1983, is hereby reinstated.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.