745 P.2d 958

**SLOVER MASONRY, INC.,**
**Petitioner Employer,**

**State Compensation Fund,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Thaddeus J. Williamson,**
**Respondent Employee.**

**No. 1 CA–IC 3664.**

Court of Appeals of Arizona,
Division 1, Department C.

June 30, 1987.

Review Granted Oct. 29, 1987.

State Compensation Fund by Robert K. Park, Chief Counsel, Teri A. Thomson, Phoenix, for petitioner employer & carrier.

Dennis P. Kavanaugh, Chief Counsel The Indus. Com'n of Arizona, Phoenix, for respondent.

Taylor & Schaar by Don F. Schaar, Phoenix, for respondent employee.

OPINION

CORCORAN, Judge.

This is a special action review of an Industrial Commission award finding that Thaddeus J. Williamson (claimant) has sustained a 70% permanent impairment of function to his right lower extremity as a result of an industrial injury. Since the award is inconsistent with the medical testimony, and with previous decisions of the Arizona Supreme Court, we set aside the award.

On December 3, 1984, claimant, a hod carrier for Slover Masonry, fell 30–35 feet to the ground while dismantling scaffolding during the course of his job, incurring a comminuted fracture of the tibial condyle of his right knee. James Alway, M.D., a board-certified orthopedic surgeon, performed 5 surgeries on claimant's right lower extremity.

Claimant and Dr. Alway both testified at hearings before the Administrative Law Judge (ALJ). The sole issue was the percentage of claimant's permanent impairment. Claimant testified regarding the accident, surgeries, and continuing effects of the accident, including numbness in the right leg and an impaired ability to walk and climb. He also testified that he could no longer perform approximately 78% of his previous job functions.

Dr. Alway confirmed claimant's statements, and testified regarding the rating of claimant's permanent impairment. Dr. Alway stated that claimant had a 50% functional loss of the right lower extremity, rated according to the American Medical Association *Guides to the Evaluation of Permanent Impairment (Guides)*. In response to claimant's attorney's questioning as to whether the *Guides* "provide a fair measurement of this man's permanent injuries," Dr. Alway stated: "As far as the functional impairment, yes." The doctor was later asked whether "we [can] assume that those guidelines cover all aspects of his impairment ... or can we assume that they do not cover the aspects of his impairment that interfere with his ability to do his old job?" Dr. Alway responded: "Well, it measures the medical impairment of the leg, but not his disability as far as his former occupation." Despite counsel's attempts to have the doctor testify that "the only fair way to take stock of them [claimant's injuries] is not only to look at the AMA Guidelines but to consider what impact those permanent injuries have upon his ability to do his old job," Dr. Alway did not so testify. He stated that "I have to go by what the AMA ... says about impairment, the way it is."

The hearings regarding rating claimant's impairment concluded with the testimony of Fred Brick, a State Compensation Fund Labor Market Consultant. His testimony was limited to a description of claimant's job duties and an identification of the 35% of those duties which he believed claimant could still perform.

On August 26, 1986, the ALJ issued his Decision Upon Hearing and Findings and Award for Scheduled Permanent Disability, finding that claimant "sustained a 70% permanent impairment of function" of his right lower extremity. The ALJ stated that he was "persuaded by Dr. Alway's opinion and by his own independent evaluation of the record that the AMA Guides in this case do not provide a fair, accurate measure of the degree of impairment." Therefore, the ALJ found claimant has a 70% impairment, while the *Guides* rate claimant's condition as a 50% impairment.

Slover Masonry and the State Compensation Fund filed a special action seeking review of this award and of the Decision Upon Review which affirmed this award. They present two issues for our consideration:

1. Whether the evidence in this case supports the ALJ's consideration of claimant's inability to perform his former job, when the only medical expert testified that the *Guides* fairly measure claimant's medical and functional impairment, "but not his disability as far as his former occupation;" and

2. Whether the ALJ is bound by expert medical opinion as to whether the *Guides* provide a fair and accurate measure of the impairment resulting from an industrial injury.

The decision in this case involves the application of A.R.S. § 23–1044(B)(21), of Industrial Commission Regulation A.C.R.R. R4–13–113(D) (Rule 13(D)), and the consideration of 4 cases decided by our supreme court—*Adams v. Industrial Comm'n,* 113 Ariz. 294, 552 P.2d 764 (1976); *Dutra v. Industrial Comm'n,* 135 Ariz. 59, 659 P.2d 18 (1983); *Gomez v. Industrial Comm'n,* 148 Ariz. 565, 716 P.2d 22 (1986); and *W.A.*

*Krueger Co. v. Industrial Comm'n,* 150 Ariz. 66, 722 P.2d 234 (1986).

A.R.S. § 23–1044(B)(21) establishes the compensation to be awarded, based on a percent of average monthly wage and percent of impairment, for "the partial loss of use" of various portions of the body. Rule 13(D) states that the rating of percent of functional impairment shall be in accordance with the *Guides.* In *Adams,* though, our supreme court held that "Rule 13(D) must be so interpreted that the AMA Guides apply exclusively to the evaluation of permanent impairment to the extent that the AMA Guides cover the specific impairment and the percentage thereof. Beyond this, Rule 13(D) has no application." 113 Ariz. at 295–96, 552 P.2d at 765–66. The court found that the *Guides* did not adequately rate a functional loss of hearing, and increased claimant's impairment rating above that listed in the *Guides,* based on U.S. Labor Department Standards which did adequately rate the hearing loss.

In *Dutra,* the court again interpreted the "partial loss of use" language in A.R.S. § 23–1044(B)(21). Claimant, a weight training instructor, suffered a severe loss of strength in his arm, but very little loss of motion. Loss of strength is not accounted for in the *Guides.* The court disagreed with the court of appeals' determination that Arizona courts will not analyze loss of use based in part upon a claimant's former job. The court quoted Professor Larson, who, in analyzing loss of use cases, stated: "The trouble with these cases is that they assume that 'loss of use' can be mechanically measured in relation to use by some theoretical claimant, ... that the concept ... has some fixed uniform content ... regardless of age, sex, skill, or anything else." 2 A. Larson, *Workmen's Compensation Law* § 58.13(e) at 10–344.17 (1986). Following this reasoning, *Dutra* held that "[i]nability to perform the claimant's particular job at the time of his injury must be considered in determining the extent of the workman's disability." 135 Ariz. at 61, 659 P.2d at 20.

Several years later, the Arizona Supreme Court decided *Gomez* in an attempt "to end any confusion over the reach of our decision in *Dutra.*" 148 Ariz. at 566, 716 P.2d at 23. *Gomez* narrows the reach of *Dutra* by stating that the ALJ cannot consider a claimant's inability to perform his job when the *Guides* adequately rate the impairment. "When [the *Guides* ] are applicable and 'truly reflect the claimant's loss', they may be used as the sole indicator or factor to be considered in fixing the percentage of impaired function." 148 Ariz. at 569, 716 P.2d at 26 (quoting from *Adams* ). The court recognized its limiting of *Dutra:*

> *Dutra* did hold that "inability to perform the claimant's particular job at the time of his injury must be *considered* in determining the extent of the workman's disability." ... This holding was made in a factual context in which the AMA *Guides* were unable to accurately measure the actual partial loss of use [because the *Guides* do not measure loss of strength].

*Id.*

Had *Dutra* not been narrowed by *Gomez,* the ALJ's 70% impairment award could be affirmed. *Gomez,* however, limited *Dutra* to establish that an ALJ should not consider whether a claimant is unable to perform his former job unless a medical expert determines that the *Guides* inadequately rate impairment. The *Guides* have been found inadequate when conditions exist which are simply not accounted for by the *Guides* —a functional loss of hearing in *Adams* and a severe loss of arm strength in *Dutra,* for example. The *Guides* are not designed to account for a claimant's inability to perform his former job duties. Therefore, if *Dutra* had not been qualified by *Gomez,* the *Guides* would be inadequate by definition whenever the industrial injury had any effect on a claimant's ability to perform his former work. This is the result that *Gomez* rejected when the court stated that *Dutra* did not establish a "revolution in worker's compensation law." 148 Ariz. at 569, 716 P.2d at 26. In *Gomez,* because "[a]ll doctors agreed that the AMA *Guides* provided an accurate measure of the degree of Gomez' impairment," 148 Ariz. at 570, 716 P.2d at 27, the award was based on the *Guide's* rating, despite the undisputed fact that Gomez "could no longer perform most of the tasks required in his old employment and that he could not

return to his former work." 148 Ariz. at 566–67, 716 P.2d at 23–24.

The result in *Gomez* relies in part upon the duty of medical experts to rate impairment. The Preface to the *Guides* indicates that permanent impairment is a purely medical condition, while permanent disability is not a purely medical condition. The Preface also states that rating of permanent impairment "is a function that physicians alone are competent to perform." In *Smith v. Industrial Comm'n*, 113 Ariz. 304, 552 P.2d 1198 (1976), our supreme court adopted these definitions. 113 Ariz. at 305–06 n. 1, 552 P.2d at 1199–1200 n. 1. In *Culver v. Industrial Comm'n*, 23 Ariz. App. 540, 534 P.2d 754 (1975), this court noted that "[t]he [Industrial] Commission is not permitted to substitute its judgment for the uncontroverted medical evidence." 23 Ariz.App. at 543, 534 P.2d at 757. *Garcia v. Industrial Comm'n*, 20 Ariz.App. 243, 511 P.2d 687 (1973), also states that the "Commission would not be allowed to substitute its judgment [for the medical expert's] on matters lying exclusively within the field of medical science." 20 Ariz. App. at 246, 511 P.2d at 690. Thus, the rating of impairment is a purely medical function, while evaluation of disability is a question of law. *Alsbrooks v. Industrial Comm'n*, 118 Ariz. 480, 578 P.2d 159 (1978); *Smith.*

Finally, our supreme court decided in *Krueger* that medical experts may disregard the *Guides* when they do not adequately rate impairment. Two physicians testified that claimant suffered no permanent impairment, despite the *Guides'* providing a 5% impairment for claimant's condition. Both doctors stated that "the recommended rating was too liberal." 150 Ariz. at 67, 722 P.2d at 235. The ALJ issued an award closing the claim without permanent impairment. The ALJ subsequently resigned, so another ALJ performed administrative review of the award. The second ALJ issued an award based on a 5% permanent impairment. Our supreme court reinstated the original award which found no impairment, and held that the "Guides are not to be blindly applied regardless of a claimant's actual physical condition." 150 Ariz. at 68, 722 P.2d at

236. We reiterate that the *Guides* may adequately rate a medical impairment even though they do not address a claimant's inability to perform his former job.

With these cases in mind, we note that while the ALJ's decision-making function may not be usurped by a medical expert's opinion, the ALJ may not substitute his judgment for "the uncontroverted medical evidence," and the ALJ is bound to follow *Gomez*. *Gomez* mandates that the ALJ consider claimant's inability to perform his previous job only if the *Guides* are inadequate.

Applying this authority to the present case, we must set aside claimant's award of a 70% permanent impairment when the *Guides* provide a 50% impairment rating. Dr. Alway testified that the *Guides* fairly rate claimant's medical and functional impairment. *Gomez* indicates that we do not consider the injury's effect on claimant's ability to do his former job unless the *Guides* inadequately rate his impairment, and *Krueger* instructs us that the medical expert determines whether the *Guides* provide an adequate measure of impairment.

In his answering brief, claimant's counsel argues that because A.R.S. § 23–1044(B) and various cases use the term "disability," rather than "impairment," and that because Dr. Alway testified that the *Guides* do not measure claimant's "disability as far as his former occupation," the award should be affirmed. This argument is circular. Unless *Dutra* applies, which it does not in this case, "[i]n the scheduled injury area, the percentage of impairment is all-important since the legislature has translated the percentage into a fixed rate of permanent disability [in A.R.S. § 23–1044(B)]." *Smith*, 113 Ariz. at 307 n. 4, 552 P.2d at 1201 n. 4.

The award is set aside.

SHELLEY, P.J., and CONTRERAS, J., concur.