761 P.2d 1035

**SLOVER MASONRY, INC.,**
**Petitioner Employer,**

**State Compensation Fund,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Thaddeus J. Williamson,**
**Respondent Employee.**

**No. CV–87–0318–PR.**

Supreme Court of Arizona,
En Banc.

Sept. 12, 1988.

State Compensation Fund by Robert K. Park, Chief Counsel and Teri A. Thomson–Taylor, Phoenix, for petitioner employer and petitioner carrier.

Dennis P. Kavanaugh, Chief Counsel Industrial Com'n of Arizona, Phoenix, for respondent.

Taylor & Schaar by Don F. Schaar, Phoenix, for respondent employee.

FELDMAN, Vice Chief Justice.

Claimant seeks review of a court of appeals' opinion denying his workers' compensation award. The court vacated the award because the administrative law judge (ALJ) did not strictly adhere to the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (the AMA Guides) when determining the percentage of claimant's permanent impairment. We must decide whether an administrative law judge is bound to follow the AMA Guides as the sole measure of impairment. We have jurisdiction under Ariz. Const. art. 6, § 5(3); A.R.S. §§ 12–120.24 and 23–948; Rule 23, Ariz.R.Civ. App.P., 17B A.R.S.

## FACTUAL AND PROCEDURAL SUMMARY

The operative facts are undisputed. Thaddeus J. Williamson (claimant) was a

hod carrier employed by Slover Masonry (respondent). On December 3, 1984, claimant fell off a scaffold at work, fracturing the tibial condyle of his right knee. James Alway, M.D., a board-certified orthopedic specialist, performed five surgical operations on claimant's leg. The surgeries did not entirely repair the damage, and claimant continued to suffer cramping, pain, loss of balance, foot drop, numbness, tingling, and restricted extension and flexion of both the right leg and right foot.

On January 7, 1986, the Industrial Commission (the Commission) issued a Notice of Permanent Disability Benefits (Scheduled) stating that claimant had suffered a fifty percent loss of function in his right leg. The fifty percent loss entitled claimant to fifty percent of his average monthly wage for twenty-five months. A.R.S. § 23–1044(B)(15) and (21). Claimant requested a hearing to prove that his permanent disability was greater than fifty percent.

The Commission held hearings on July 25 and August 16, 1986 to determine the correct percentage of permanent disability for claimant's injury. Claimant testified that his work as a hod carrier involved seven distinct tasks: (1) pouring water into a cement mixer; (2) adding sand to mortar in the mixer; (3) pouring concrete or mortar from the mixer into a wheelbarrow; (4) pushing the wheelbarrow to the places where masons would use the mortar; (5) placing mortar onto the mortar boards by shoveling directly or by climbing scaffolding; (6) erecting scaffolding; and (7) loading buckets with mortar for hauling up the scaffolding.

Claimant explained that he could still pour water into the mixer and empty the concrete or mortar from the mixer into a wheelbarrow. However, he could not complete the other five tasks related to his hod carrier job, which constituted about seventy-eight percent of his job when measured by time alloted each task. A labor market consultant confirmed that claimant's injury disabled him from performing sixty-five percent of a hod carrier's job.

Dr. Alway testified that he evaluated claimant's permanent injuries under the AMA Guides and concluded that claimant had a fifty percent functional loss of his right lower leg. However, Dr. Alway made it clear that the AMA Guides did not actually measure ability to perform a specific job or occupation:

Q. [CLAIMANT'S ATTORNEY] Now, Doctor, in your professional opinion, do [the AMA Guides] in this particular case provide a fair measurement of this man's permanent injuries?

A. [DR. ALWAY] As far as the functional impairment, yes.

Q. Okay. In terms of the man's—well, let me back up. Those guidelines as I understand it talk about loss of motion in a clinical setting?

A. Yes.

Q. And I take it that you in evaluating him measured how much motion he's lost this way, that way, et cetera?

A. Yes.

Q. Do those guidelines attempt to take into consideration his impairment in terms of what he used to be doing in his job?

A. No.

Q. Would it be fair to state that those guidelines then really do not fairly or accurately even attempt to measure his impairment in terms of what he used to be doing?

A. Yes.

Q. Okay. Insofar as they—well, can we look at this man in a vacuum and can we assume that those guidelines cover all aspects of his impairment? Or can we assume that they do not cover the aspects of his impairment that interfere with his ability to do his old job?

A. Well, it measures the medical impairment of the leg, but not his disability as far as his former occupation.

Q. Okay. Do you feel that in evaluating a man's permanent injuries that you should—that the only fair way to take stock of them is not only to look at the AMA Guidelines but to consider

what impact those permanent injuries have upon his ability to do his old job?

A. Well, I have to go by what the AMA or [the *Journal of the American Medical Association*] says about impairment, the way it is.

Q. Okay. I understand that. But what I am saying to you is: as a physician, you hold an opinion as to what provides a fair measurement and what takes into consideration all aspects of his impairment; is that correct?

A. Well, *I feel that the disability is, the working disability is not totally covered by the guides.*

Q. Okay. That's what I'm getting to. When you evaluate a man in terms of impairment, you have got to ask the question, "impaired from doing what?" Okay? And in your office, you saw he's impaired from moving his leg so many degrees in this direction, so many degrees in that direction, and you stop your inquiry there under the AMA Guidelines?

A. That's correct.

Reporter's Transcript (RT), July 25, 1986, at 36–38 (emphasis added).

On August 26, 1986, the ALJ conducting the hearing summarized Dr. Alway's testimony in his decision:

Dr. Alway opined that the A.M.A. Guidelines do not attempt to take into consideration the applicant's impairment in terms of his job functions. Stated another way, Dr. Alway said that the working disability the applicant suffers is not totally covered by the Guides. Dr. Alway agreed with the applicant's assessment of which job functions he can no longer do.

Decision Upon Hearing, August 26, 1986 (Findings), at ¶ 4.

The ALJ recognized that the "effect [of the injury] on earning capacity is not a factor to be considered," but concluded also that the AMA Guides did "not provide a fair, accurate measure of the degree of impairment." *Id.* at ¶¶ 8 and 9. After making an "independent evaluation of the record," the ALJ found that claimant had sustained a seventy percent permanent impairment of function. *Id.* at ¶¶ 9 and 11. He awarded claimant fifty percent of his average monthly wage for a period of thirty-five months, a total of $23,187.50. A.R.S. § 23–1044(B)(15) and (21).

Pursuant to the employer's request, the ALJ reviewed his decision and affirmed the award. *See* A.R.S. §§ 23–942(D), –943(A) and (B). The employer and compensation carrier then sought special action review by the court of appeals. A.R.S. §§ 23–951(A); 12–120.21(B); Rule 1, Ariz.R.P.Spec.Act., 17B A.R.S.

## COURT OF APPEALS

The court of appeals set aside the award, concluding it was "inconsistent" with the medical testimony and with Arizona Supreme Court decisions. *Slover Masonry, Inc. v. Industrial Commission,* 155 Ariz. 211, 745 P.2d 958 (Ct.App.1987). The court reasoned that *unless* a medical expert determines that the AMA Guides do not "adequately" rate claimant's impairment, an ALJ cannot consider a claimant's inability to perform his job in determining the correct disability rating. *Id.* at 212–13, 745 P.2d at 959–60 (citing Rule R4–13–113(D), Arizona Administrative Rules and Regulations (A.C.R.R.)); *W.A. Krueger Co. v. Industrial Commission,* 150 Ariz. 66, 722 P.2d 234 (1986); *Gomez v. Industrial Commission,* 148 Ariz. 565, 716 P.2d 22 (1986). In the court's view, Dr. Alway never questioned the adequacy of the AMA Guides in measuring the extent of claimant's impairment. *Slover,* 155 Ariz. at 214, 745 P.2d at 961. Therefore, the ALJ incorrectly considered claimant's ability to perform his job when determining the percentage of permanent impairment of his right lower leg. *Id.*

We accepted claimant's petition seeking review of the court of appeals' decision.

## THE ISSUES

This case presents two interrelated issues:

1. When may an ALJ reject the AMA Guides in determining a claimant's percentage of permanent impairment?

2. Did the ALJ here abuse his discretion in concluding that the AMA Guides did not accurately reflect the true percentage of claimant's leg impairment?

## DISCUSSION

The Arizona workers' compensation program provides benefits to covered employees disabled by industrial accidents. The program attempts to accurately ascertain the worker's disability and promptly distribute his benefits. *See, e.g., Fullen v. Industrial Commission*, 122 Ariz. 425, 429, 595 P.2d 657, 661 (1979). To streamline procedures, the legislature created standard compensation percentages for specific ("scheduled") injuries. *Dutra v. Industrial Commission*, 135 Ariz. 59, 61, 659 P.2d 18, 20 (1983). For instance, for the loss of a leg, the state compensation fund will pay fifty-five percent of a covered employee's average monthly wage for fifty months. A.R.S. § 23–1044(B)(15). This sum is in addition to compensation for any temporary total disability. A.R.S. § 23–1044(B). If the impairment is only partial, the fund will pay fifty percent of the worker's average monthly wage for the proportionate number of months that the partial loss bears to the total loss of use. A.R.S. § 23–1044(B)(21).[1] Thus, if a leg is fifty percent impaired, the fund will pay benefits for only twenty-five months (fifty percent × fifty months). If the leg is seventy percent impaired, the payments are for thirty-five months (seventy percent × fifty months).

Normally the Commission determines the percentage of the leg's loss based on the treating physician's rating of the impairment resulting from the injury. When the physician discharges a claimant, the physician rates the percentage of functional impairment in accordance with the AMA Guides, if they apply, with a clinical report sufficiently detailed to support the percentage rating. *See* A.C.R.R. R4–13–113(D). The AMA Guides measure the clinical or physiological percentage of impairment

without regard to how the injury affects a person's ability to perform his job. *See Adams v. Industrial Commission*, 113 Ariz. 294, 295, 552 P.2d 764, 765 (1976).

■ If a claimant is dissatisfied with the Commission's initial rating, he may seek a hearing before an ALJ. An ALJ determines the correct percentage of a claimant's disability and may consider a wide range of evidence to ensure "substantial justice." A.R.S. § 23–941(F). Although the AMA Guides are important in the disability rating, they are not the philosopher's stone:

> When they are applicable and "truly reflect the claimant's loss", they may be used as the sole indicator or factor to be considered in fixing the percentage of impaired function. *Adams v. Industrial Commission*, 113 Ariz. at 295, 552 P.2d at 765. Where the ALJ finds that the *Guides* do not provide a fair, accurate measure of the degree of impairment, he or she *must* turn to other factors. *Id.* Any relevant factors, except those prohibited by statute (such as loss of earning capacity) may be considered. Effect on job performance is one such factor. *Dutra, supra.* Evidence regarding such factors may come from experts, from the literature, lay witnesses or any other competent source that would assist the ALJ in determining the actual percentage of partial loss of use. Use of these factors fulfills the statutory mandate [to accurately determine the percentage of loss of use].

*Gomez*, 148 Ariz. at 569, 716 P.2d at 26 (emphasis added).

■ Indeed, non-medical factors may be vital when assessing a disability, despite the AMA Guides. *See Jaske v. Murray Ohio Manufacturing Co., Inc.*, 750 S.W.2d 150, 151 (Tenn.1988). In fact, sometimes the AMA Guides do not apply. *See, e.g., Dayron Corp. v. Morehead*, 509 So.2d 930 (Fla.1987) (AMA Guides inadequately gave a rating of zero to five percent permanent

---

**1.** In 1987, the Arizona legislature changed A.R.S. § 23–1044(B)(21) to define "loss of use" to mean only "a loss of physical function to the affected member, sight or hearing." This

change has no bearing here as it occurred after the ALJ decided this case. *See General Tire Co. v. Industrial Commission*, 156 Ariz. 174, 177 n. 1, 750 P.2d 1377, 1380 n. 1 (Ct.App.1988).

impairment for a machinist who could no longer perform his craft because of acute contact dermatitis to cutting oils); *OBS Co., Inc. v. Freeney*, 475 So.2d 947 (Fla. Dist.Ct.App.1985) (AMA Guides gave no ratable permanent impairment for journeyman plasterer who developed severe contact dermatitis to wet plaster and cement); *Kroeplin v. North Dakota Workmen's Compensation Bureau*, 415 N.W.2d 807 (N.D.1987) (employee entitled to industrial award even though the AMA Guides did not substantiate subjective pain symptoms). Therefore, when other evidence requires a different result, a medical expert cannot bind the ALJ to unreasoning adherence to the AMA Guides.

Here, claimant sought a hearing to establish the correct rating of his permanent disability. Using the AMA Guides as his only criterion, Dr. Alway concluded that claimant has a fifty percent impairment in his right leg. However, Dr. Alway also testified that the AMA Guides provided a fair measure of claimant's medical impairment "but not his disability as far as his former occupation." Claimant testified, on the other hand, that he could only perform about twenty-two percent of his duties as a hod carrier. Dr. Alway agreed with this assessment. The labor consultant concurred in the general range, stating that claimant could perform about thirty-five percent of his job.

■ The ALJ is responsible for determining the percentage of disability, not simply the percentage of physiological impairment in the functioning of limbs and organs. The AMA Guides measure only clinical, physical impairment expressed in percentage of loss of motion. The ALJ, however, must determine the degree of functional loss or impairment, and thus may consider claimant's inability to pursue the specific craft, job, or profession he or she practiced at the time of the incapacitating industrial injury. *Dutra*, 135 Ariz. at 61, 659 P.2d at 20.

Therefore, the individual claimant's occupation, viewed in light of the physical impairment, affects the ALJ's determination of the claimant's "disability." Each craft, calling, or job places unique demands on the body. Thus, a five percent loss of leg movement might slightly disable a lawyer or computer programmer but could markedly disable a laborer or professional dancer. Of course, we leave undisturbed the rule that in no event should the ALJ consider the actual loss of individual earning capacity in establishing the correct percentage of scheduled disability. *See* A.R.S. § 23–1044(H); *Gomez*, 148 Ariz. at 569, 716 P.2d at 26.

Here, the court of appeals' opinion implies that the ALJ must follow the AMA Guides unless a medical expert determines that they are inadequate. *Slover*, 155 Ariz. at 214, 745 P.2d at 961. We disagree. The ALJ must consider all competent and relevant evidence in establishing an accurate rating of functional impairment, even if a medical expert asserts that the AMA Guides are perfectly adequate to measure loss of motion. *See* A.C.R.R. R4–13–113(D).

■ The AMA Guides are only a tool adopted by administrative regulation to assist in ascertaining an injured worker's percentage of disability. Thus, when the AMA Guides do not truly reflect a claimant's loss, the ALJ must use his discretion to hear additional evidence and, from the whole record, establish a rating independent of the AMA recommendations. *W.A. Krueger Co.*, 150 Ariz. at 68, 722 P.2d at 236. That is why A.C.R.R. R4–13–113(D) states that the AMA Guides "should" be used to establish a rating of functional impairment *"if applicable"* (emphasis added). If an injury has resulted in a functional impairment not adequately reflected by clinical measurement under the AMA Guides, then an ALJ must consider impact on job performance. *See Gomez*, 148 Ariz. at 569, 716 P.2d at 26.

## CONCLUSION

■ An ALJ may properly consider the impact of the industrial accident on a claimant's ability to perform his or her job. Here, the AMA Guides gave only a fifty percent rating when the medical expert, the labor consultant, *and* the claimant all

agreed that the impact on claimant's ability to perform his job was greater than fifty percent. The ALJ's resulting seventy percent rating reasonably conformed to the testimony. Thus, the award was supported by the evidence.

We vacate the court of appeals' opinion and reinstate the Commission's award.

GORDON, C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.