942 P.2d 1172

**Clyde SIMPSON, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Hardison, Dan Farming, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 96–0180.**

Court of Appeals of Arizona, Division 1, Department B.

July 29, 1997.

Lawrence P. Nicholls, Phoenix, for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

James F. Crane, Chief Counsel, State Compensation Fund by Kirk A. Barberich, Phoenix, for Respondents Employer and Carrier.

## OPINION

FIDEL, Judge.

The Industrial Commission found the claimant Clyde Simpson's industrial injury medically stationary without permanent disability. We review and set aside that award. In the course of our opinion, we consider the fourth edition of the *American Medical Association Guides to the Evaluation of Permanent Impairment* ("the *Guides*"), which provides, as previous editions did not, for the rating of chronic pain. We consider whether, by virtue of this revision, the *Guides* provide the exclusive means for evaluating permanent impairment attributable to persistent residual pain. We conclude that they do not; the *Guides* do not purport to provide, and may not be assumed by the Industrial Commission to provide, a comprehensive measure of impairment by pain. We hold that the law remains after the fourth edition, as before, that disabling pain resulting from an industrial injury is compensable, even though the

degree of impairment may not be ratable pursuant to the *Guides*.

## BACKGROUND

In 1994, Clyde Simpson, a farm laborer, sustained an industrial back and neck injury when an automobile struck a spray bar on his tractor. Simpson's workers' compensation claim was accepted for temporary benefits, and he received physiotherapy and chiropractic treatment for persistent neck and back pain. When his employer's insurer eventually closed the claim, determining that Simpson had no permanent disability, Simpson requested a hearing.

At the hearing, Simpson did not dispute that he was medically stationary, but maintained that his industrial accident resulted in permanently disabling neck pain, which prevented his return to heavy lifting and tractor driving. The parties disputed whether his residual pain symptoms constituted a permanent impairment and, if so, whether the impairment resulted from the present or a prior accident.

Simpson underwent eight to ten months of medical treatment for neck and low back pain after a 1987 automobile accident. Eventually he returned to his pre-accident employment at a cement block factory notwithstanding the opinion of Dr. Li—then his treating physician—that he should not do so. After returning to work, according to Dr. Li's medical records, Simpson continued in February 1988 to experience "recurrent pain and discomfort in his neck and low back" and, as of April 1988, had not regained full motion in his neck.

After sustaining the present injury in 1994, Simpson was evaluated by Drs. Kelley and Stojic, who testified at the hearing and agreed on all material points but one. Drs. Kelley and Stojic agreed that Simpson suffered from pre-existing multi-level degenerative cervical disc disease related to his 1987 accident, agreed that he had no objective condition that would preclude his return to work, and agreed that he suffered from disabling subjective pain that rendered him un-

able to resume heavy farm labor. They disagreed in part over the source of his disabling pain.

Dr. Kelley attributed Simpson's neck pain to his 1994 industrial injury. He based this attribution on Simpson's history of unrestricted heavy labor for a number of years preceding the present injury, during which, according to Simpson, he was not experiencing neck pain. Dr. Stojic differed from Dr. Kelley by attributing Simpson's symptoms in part to degenerative arthritic changes resulting from his prior injury. Dr. Stojic acknowledged, however, that Simpson's pain complaints were "related at least in part to the industrial injury."

Faced with some degree of conflict in the medical testimony, the Administrative Law Judge ("ALJ") resolved it in favor of Dr. Stojic. The ALJ found, and attributed the finding to Dr. Stojic, that Simpson's inability to return to heavy farm labor is unrelated to his industrial injury. After exhausting the administrative review process, Simpson petitioned this court for appellate review. He argues that the evidence does not support the ALJ's finding that his inability to return to work is unrelated to his present injury. He also attacks the ALJ's alternative finding that any disability attributable to his residual pain is noncompensable because it does not constitute a ratable permanent impairment under the *Guides*. We consider each argument in turn.[1]

## EVIDENCE OF DISABLING PAIN

We take the evidence in the light most favorable to sustaining the award and do not reweigh it. *Salt River Project v. Industrial Comm'n*, 128 Ariz. 541, 544–45, 627 P.2d 692, 695–96 (1981). We will affirm an award that is supported by any reasonable theory of the evidence. *Carousel Snack Bar v. Industrial Comm'n*, 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988).

In his findings, the ALJ stated:

Dr. Stojic testified that even if some of [Simpson's] continuing pain complaints are related to his 1994 injury, the current work

---

1. Because we find Simpson correct on both points, we do not reach his additional argument that the ALJ failed to make specific credibility findings.

restriction stems *entirely* from degenerative changes resulting from [Simpson's] 1987 injury.

... [Simpson's] current inability to return to his date of injury employment is not causally related to his 1994 injury but instead is the result of other factors, including degenerative changes caused by [Simpson's] 1987 injury and other conditions ... which are unrelated to the 1994 industrial incident.

(Emphasis added.)

■ Simpson argues that the ALJ erred in attributing the opinion to Dr. Stojic that Simpson's inability to return to heavy farm labor is "entirely" related to his 1987 injury. In making this finding, according to Simpson, the ALJ overlooked the fact that Dr. Stojic attributed Simpson's inability to work to his symptoms of pain and attributed those symptoms "at least in part" to his 1994 injury. Simpson is correct.

On direct examination, Dr. Stojic stated that Simpson had no "indications for the work restrictions" that related to his 1994 industrial injury; Simpson had degenerative cervical changes attributable to his 1987 injury, but had not "ac[c]rued any permanency" from the 1994 injury. From the context of this testimony, it is clear that Dr. Stojic was referring in these opinions to objective, physical indications of permanent impairment.

During cross-examination, Dr. Stojic addressed the source of Simpson's continuing subjective complaints of pain:

Q. ... Is it fair to say ... that ... [Simpson's] complaints of pain were more likely related to the old injury rather than the new injury?

A. To a certain extent. I cannot negate the fact that [Simpson] sustained a second injury in the second motor vehicle accident. So, complaints of pain ... are always subjective and ... he does have some degenerative changes, ... there was no doubt in my mind that he doesn't (sic) have pain but the pain itself, I mean, it's not sufficient as we know to make a decision whether the patient incurred any permanency or not.

Q. Under the AMA Guides?

A. Correct.

Q. ... Doctor, you're saying now that all of these complaints of pain are not all related to the old accident but that you're conceding that probably some of them are related to the new accident too?

A. Yes. Sure.... [Simpson] was seen by many physicians and they have treated his problem.

....

Q. ... [Y]ou have no doubt that [Simpson] is limited by the symptoms but you're saying it's not related to the [new] injury?

A. That's correct.

Q. ... [I]f we accept his history or that his statements to you are correct of how he is limited, you would recommend that he not go back ... solely on the symptoms to the heavy work of the farming?

A. Heavy labor work; correct.

Q. And ... you would include the farming?

A. Yes.

Q. And those symptoms are related at least in part to the industrial injury?

A. Subjective symptoms, yes.

Because Dr. Stojic frequently shifted focus from objective symptoms to subjective complaints, his testimony is somewhat hard to follow. When these elements are distinguished, however, the doctor's testimony may be summarized as follows: (1) no objective physical condition prevents Simpson's return to work; (2) persistent residual pain prevents his return to heavy farm labor; (3) Simpson's residual pain is related in part to his 1994 injury.

■ A medical condition need not be solely attributable to an industrial accident to be compensable; it suffices that the condition be attributable in part. *Allen v. Industrial Comm'n*, 124 Ariz. 173, 175, 602 P.2d 841, 843 (App.1979). Dr. Stojic's testimony established a causal relationship between Simpson's industrial injury, residual pain, and inability to return to heavy farm labor. The ALJ was simply mistaken in attributing to Dr. Stojic the opinion that Simpson's work

restrictions are wholly attributable to his 1987 injury.

## AMA GUIDES

This does not conclude our inquiry; the ALJ provided an alternative basis for his award, concluding that, even if Simpson's pain complaints are attributable to his industrial injury, they are not compensable because they "do not constitute a ratable impairment under *applicable* AMA Guidelines."

Simpson argued at the hearing that he was not obliged to establish a permanent impairment pursuant to the *Guides,* and that he had done so instead on the basis of undisputed medical testimony that his symptoms of pain, though unratable under the *Guides,* preclude him from returning to his date-of-injury employment. In support of this assertion, Simpson cited *Cassey v. Industrial Comm'n,* 152 Ariz. 280, 283, 731 P.2d 645, 648 (App.1987), in which this court concluded that a claimant may establish, independent of the *Guides,* that disabling pain constitutes a permanent impairment by showing (1) a causal relationship between residual pain and an industrial injury and (2) a resulting permanent inability to return to former work.

The ALJ dismissed *Cassey* as applicable only to a prior edition of the *Guides* that provided no basis for rating impairing pain. The ALJ stated:

The *Cassey* holding is ... inapplicable in this matter since the current edition of the AMA Guidelines (unlike the edition at issue in *Cassey* ) does [provide] for the rating of chronic pain complaints. *See Guides to the Evaluation of Permanent Impairment,* Chapt. 15 (4th Ed.). When, as in this case, the AMA Guidelines do provide a "fair, accurate measure of the degree of impairment," there is no need to resort to other factors such as work restrictions to resolve the impairment issue.

... Because the medical evidence establishes that [Simpson's] current chronic pain complaints do not constitute a ratable impairment under *applicable* AMA Guidelines, ... [Simpson] is not entitled to permanent benefits.

(citations omitted). In drawing this conclusion, the ALJ misread both pertinent case law and the *Guides.*

Our discussion begins with Industrial Commission Rule R20–5–113(D):

Upon discharge from treatment the physician shall report any rating of any impairment of function as the result of the injury. Any rating of the ... functional impairment should be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in "Guides to the Evaluation of Permanent Impairment", if applicable.

Arizona Administrative Code ("A.A.C.") R20–5–113(D) (Supp.96–4).

■ Pursuant to this rule, impairments "should" be rated under the *Guides,* "if applicable." *Id.* Arizona courts, however, have repeatedly held that "[t]he AMA Guides are not to be blindly applied regardless of a claimant's actual physical condition." *W.A. Krueger Co. v. Industrial Comm'n,* 150 Ariz. 66, 68, 722 P.2d 234, 236 (1986). When the *Guides* do not cover, or do not permit accurate assessment of, a claimant's impairment, that does not mean that the impairment is not compensable. It means rather that the impairment may be established by other means. *See id.* at 68, 722 P.2d at 236; *accord Gomez v. Industrial Comm'n,* 148 Ariz. 565, 569, 716 P.2d 22, 26 (1986); *Smith v. Industrial Comm'n,* 113 Ariz. 304, 306–07, 552 P.2d 1198, 1200–01 (1976); *Adams v. Industrial Comm'n,* 113 Ariz. 294, 295–96, 552 P.2d 764, 765–66 (1976).

*Smith* and *Cassey* illustrate this general proposition in cases involving the evaluation of disabling pain. In *Smith,* a partially recovered claimant was limited by permanent residual pain from returning to heavy work. 113 Ariz. at 305, 552 P.2d at 1199. The treating physician testified that he could rate the claimant's impairment, but had not done so because the *Guides* provided no methodology for rating subjective pain. *Id.* at 305–06, 552 P.2d at 1199–1200. The Industrial Commission found that the claimant had failed to establish a permanent impairment, but the supreme court set the award aside. The court held that the inapplicability of the

*Guides* did not preclude evaluating claimant's impairment; it simply necessitated doing so by other criteria. *Id.* at 307, 552 P.2d at 1201.

In *Cassey,* as in *Smith,* a partially recovered claimant suffered from residual impairing pain, and the *Guides* provided no basis for measuring the degree of impairment. 152 Ariz. at 280, 731 P.2d at 645. In *Cassey,* however, no physician suggested, as the treating physician had in *Smith,* that the *degree* of impairment could be evaluated by some other methodology. The Industrial Commission denied compensation, finding that some rating of degree of impairment was necessary. This court set the award aside. We distinguished cases of disabling pain from other cases of permanent impairment. Ordinarily, we explained, the Industrial Commission engages in a bifurcated assessment, first determining "the existence and degree of a permanent impairment," and then determining the disability—the diminution of earning capacity—attributable to the impairment. *Id.* at 283, 731 P.2d at 648. We then explained why different treatment is accorded to cases of residual pain:

> In some cases, however, the claimant must establish the disabling effect of the industrial injury in order to establish a permanent impairment. This is true when residual pain is the permanent injury because pain is compensable as an impairment only when it is disabling. . . . Because of the intertwined issues when pain is the only residual permanent injury, the claimant must be allowed to introduce evidence of disability in order to show impairment. During the first stage, the claimant meets his burden of proof in showing the existence of a permanent impairment if he shows that the pain is caused by his industrial injury and results in his permanent inability to return to his former work. Once this initial burden has been met, claimant is then entitled to go through the second stage, during which he must show that the pain resulted in lost earning capacity. The claimant cannot be barred from proceeding to this second stage by his failure to provide a rating of impairment when none is applicable.

*Id.* (citations omitted).

In this case, the ALJ acknowledged *Cassey* but found it inapplicable because "the current edition of the AMA Guidelines (unlike the edition at issue in *Cassey* ) [provides] for the rating of chronic pain complaints." The ALJ erred in treating the revised *Guides* as providing a comprehensive methodology for evaluating pain. He likewise erred in treating the revised *Guides* as mooting *Cassey* as guiding authority in cases of permanently impairing pain.

Although the current *Guides* indeed provide a methodology for rating "chronic pain complaints" that was absent when *Cassey* was decided, the *Guides* do not purport to do so for the entire spectrum of disabling pain. To the contrary, the fourth edition of the *Guides* narrowly defines "chronic pain" and distinguishes it from other forms of pain, including "persistent pain." [2] Neither Dr. Stojic nor Dr. Kelley testified that Simpson had "chronic pain" as defined by the *Guides;* nor did either testify that the *Guides'* methodology for evaluating "chronic pain" would permit a fair and accurate measure of Simpson's form of pain; nor did either testify that Simpson had any other condition to which the *Guides'* methodology might apply. Dr. Kelley did not address the point, and Dr. Stojic merely testified that "pain itself" is "not sufficient . . . to make a decision whether the patient incurred any permanency or not" under the *Guides.* This evidence does not support the ALJ's conclusion that the *Guides* provided a "fair, accurate measure of the degree of [Simpson's] impairment." Rather, it establishes the contrary to be true.

2. The Guides provide in part:

*Chronic pain* represents the nidus of the chronic pain syndrome. Chronic pain may be referred to as "chronic benign pain" to differentiate it from the pain related to a malignant neoplasm. Pain of long duration is properly referred to as "persistent pain," with the term "chronic pain" being reserved for the devastating and recalcitrant type with major psychosocial consequences. In this chapter, the term "chronic pain" is synonymous with "chronic pain syndrome." Under the *Guides* definitions, persistent pain may exist in the absence of chronic pain, but chronic pain always presumes the presence of persistent pain.

346

The claimant has the burden of proving the existence of an industrially-related permanent impairment. *See Brooks v. Industrial Comm'n*, 24 Ariz.App. 395, 399, 539 P.2d 199, 203 (1975). Because the *Guides* were inapplicable in this case, Simpson was entitled to introduce other evidence to meet this burden. *See Smith*, 113 Ariz. at 306–07, 552 P.2d at 1200–01; *Cassey*, 152 Ariz. at 282, 731 P.2d at 647. Testimony from both medical experts established that Simpson's condition is medically stationary, that he suffers from industrially-related residual pain, and that his pain precludes his return to heavy farm labor. This evidence sufficed to establish impairment under *Cassey*.

### CONCLUSION

For the foregoing reasons, we set the award aside and remand for a new hearing.

KLEINSCHMIDT, P.J., and PATTERSON, J., concur.