975 P.2d 121

Caryl BENAFIELD, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Kelly Services, Respondent Employer,

CNA Insurance, Respondent Insurer.

No. 2 CA–IC 97–0015.

Court of Appeals of Arizona, Division 2, Department A.

July 31, 1998.

Review Denied April 12, 1999.

Tretschok, McNamara, Patten & Lohmann, P.C. by Jeffrey L. Patten, Tucson, for Petitioner Employee.

The Industrial Commission of Arizona by Anita R. Valainis, Phoenix, for Respondent.

Bury, Moeller, Humphrey & O'Meara by J. Michael Moeller and Pamela Treadwell-Rubin, Tucson, for Respondent Employer and Insurer.

## OPINION

PELANDER, Presiding Judge.

¶ 1　In this statutory special action, petitioner Caryl Benafield challenges the Industrial Commission (the Commission) award finding her industrial injury medically stationary without permanent disability. We set aside the award because the ALJ erroneously precluded petitioner's treating physician from testifying, based on a misinterpretation of *Tsosie v. Industrial Commission,* 183 Ariz. 539, 905 P.2d 548 (App.1995).

## BACKGROUND

¶ 2　We review the procedural history of this case in some detail because of its relevance to the issues raised. We view the facts in the light most favorable to sustaining the award. *Tsosie.* In June 1994, petitioner filed

a claim for a gradual injury to her hands and wrists caused by repetitive filing on her temporary secretarial job. After initially denying the claim, respondents accepted it for benefits in January 1995. Petitioner's treating physician, orthopaedic surgeon David Siegel, M.D., diagnosed bilateral carpal tunnel syndrome and performed surgery on both wrists in April and July 1995. Thereafter, the carrier closed the claim with no permanent disability in January 1996.

¶ 3 Alleging a continuing need for medical treatment and/or a permanent disability, petitioner requested the Commission to set a hearing and issue a subpoena for Dr. Siegel's testimony. Before the hearing, she submitted into evidence Dr. Siegel's medical notes pursuant to Rule 55 of the Commission's Rules of Procedure (hereinafter, the Rules), 20 Ariz. Admin. Code R20–5–155. In his notes of November 30, 1995, he stated:

> Ms. Benafield is still having pain in her arms. The pain radiates from her upper trapezi down to her forearms. She is not really having any symptoms of carpal at this point.

> \* \* \*

> I do not believe at this time that she has a permanent partial impairment related to her carpal tunnel syndrome. I believe that her .current diagnosis is that of an upper extremity tension disorder.

On January 11, 1996, Dr. Siegel reported:

> My impression is that she is currently at maximum medical improvement. I do not believe that she has a rateable [sic] permanent partial impairment. I do believe that she has permanent work restrictions which include no lifting of more than 20 lbs. and no repetitive use of her hands. I do not believe that she is going to be able to sit at a keyboard and do data entry or typing. I do believe that she could answer phones, however.

In a form dated March 8, 1996, Dr. Siegel diagnosed "[c]arpal tunnel syndrome, with arm pain persisting," and classified petitioner as partially disabled with respect to her reg-

ular occupation. Finally, in his notes of April 10, 1996, Dr. Siegel stated that petitioner was "continuing to have pain in her right wrist," which he attributed to "dynamic carpal instability." He prescribed a wrist splint.

¶ 4 Dr. Lloyd Anderson, a neurosurgeon, performed an independent medical examination for respondents in May 1996. The ALJ conducted a hearing on June 5, 1996, at which petitioner testified. When the ALJ asked petitioner's counsel if he was ready to make an election between claiming a permanent disability or the need for active medical treatment, the following conversation ensued:

> MR. PATTEN [petitioner's counsel]: Well, basically, unless there is some radical change in the anticipated testimony, we are looking at establishing permanent disability by virtue of the fact that we anticipate Dr. Siegel will testify that she has restrictions, which, according to both Dr. Siegel and our vocational expert, would prevent her from going back to her date of injury employment and that the restrictions are related to the industrial injury, which by case law establishes the existence of permanent disability.

> MR. MOELLER [respondents' counsel]: Judge, I don't believe that's the law of the State. *Tsosie* says that that's just not the law. I have a hard time understanding why we need to have labor market experts even in a case where it's clearly the law just because you can't go back to your regular work is not evidence of a permanent disability under *Tsosie*. I know perhaps they want to make new law or change that law, but we are going through the process here of where both doctors will testify that she has no permanent disability in their specialty.

> THE COURT: As far as AMA guides.[1]

> MR. MOELLER: Under the AMA guides, with or without them, she has no permanent disability. One doctor will say: I don't think she should go back to the kind of work she was doing.

> THE COURT: Based on her injury.

---

1. The ALJ presumably was referring to the *American Medical Association Guides to the Evalua-* *tion of Permanent Impairment* (4th ed.1994), which we hereinafter refer to as the *"Guides."*

MR. PATTEN: That's what I anticipate we will say.

¶ 5 The ALJ issued a subpoena for Dr. Anderson, who testified for respondents at a second hearing on August 29. Based on petitioner's medical records and his examination, Dr. Anderson testified that petitioner's injury was stationary, she had no permanent impairment attributable to the industrial injury, and any current functional incapacity antedated the work-related injury. At the conclusion of the second hearing, the ALJ remarked, "[w]e need a further hearing, at least one, for Dr. Siegel." The ALJ noted the obvious need for his testimony, and acknowledged petitioner's contention that "she can't return to her job, even though she might not have a rateable [sic] impairment." The ALJ also expressed an interest in reviewing pertinent case law relating to petitioner's permanent impairment claim.

¶ 6 In September 1996, the ALJ scheduled a third hearing for November 21, and issued a subpoena for Dr. Siegel. A few days later, however, the ALJ requested simultaneous memoranda from each side on "whether the fact that [petitioner] could arguably not return to her date of injury employment establishes the existence of a peramanent [sic] disability notwithstanding the fact that the [petitioner] might not have a ratable impairment" and "any [other] issue you feel needs to be addressed." In her memorandum, petitioner contended:

> [P]roof that a claimant is unable to return to his date-of-injury employment as a consequence of his industrial injury is sufficient to prove that the injured worker suffers from a permanent impairment and permanent disability as a matter of law.
>
> * * *
>
> Although [petitioner] anticipates that Dr. David Siegel will testify that she has a permanent medical condition (which [petitioner] submits distinguishes her case from Mr. Tsosie's case, in which Dr. Arem did not think the medical condition was necessarily permanent) which will permanently

preclude her from performing her date-of-injury job . . ., he will not testify that she has a permanent impairment pursuant to the AMA *Guides* or any other current standard of impairment evaluation.

¶ 7 In their memorandum, respondents claimed that "on two separate occasions the parties have met with Dr. Siegel to discuss this case," and "Dr. Siegel advised on May 30, 1996, that [petitioner] continued to be stationary, and that he believed that the AMA Guides were applicable to her situation, but when used, resulted in no permanent impairment rating for [her]." Based on that representation, respondents asserted Dr. Siegel's testimony would be cumulative to Dr. Anderson's and, therefore, urged the ALJ to cancel the scheduled hearing or withdraw the subpoena for Dr. Siegel.

¶ 8 After considering the memoranda, the ALJ sent both parties a letter on November 1, which stated in part:

> It is my understanding that there is no longer any claim being made that her condition is other than stationary. . . . It is my understanding that Dr. Siegel would testify that he believes that the AMA Guides would be applicable to [petitioner's] situation but that when applied they would result in no permanent impairment rating for her. It is further my understanding that Dr. Siegel might testify that, although [petitioner] does not have a ratable impairment, he might or would impose work restrictions which would preclude her from performing the duties of her date of injury job. The [respondents] argue that the relatively recent case of *Tsosie* . . . governs. I agree. While the opinion of the court in *Tsosie* could have been more enlighting [sic] as to the effect of that case on what Mr. Patten refers to as the *Hunter* [2] line of cases, I believe that it is a reasonable conclusion that those cases simply do not apply to the *Tsosie* situation or to ours. *Cassey*, [3] perhaps the best known of those cases, involved a chronic pain situation. That subject was not then addressed by the Guides. It is my impression that the

---

2. *Hunter v. Industrial Comm'n,* 130 Ariz. 59, 633 P.2d 1052 (App.1981).

3. *Cassey v. Industrial Comm'n,* 152 Ariz. 280, 731 P.2d 645 (App.1987).

Fourth Edition of the Guides addresses that issue and it may be that *Cassey* has or will lose much of its vitality. In any event, I believe that *Tsosie* governs and it would be a waste of time and money for Dr. Siegel to testify.

... [W]e should not expend resources of money and time (which amounts to money for counsel) if no useful purpose would be served by it. It is my inclination to cancel the hearing set for the appearance of Dr. Siegel and enter an award based on the record we have made. I am going to be out of the office ... [until November 14 and] will not do anything about contacting Dr. Siegel until after I return.

¶ 9 Neither side contested the ALJ's understanding or assumptions, and the ALJ then cancelled Dr. Siegel's testimony and issued his findings and award for temporary disability benefits on December 6. In his decision, the ALJ stated the case had been "submitted on the assumption" that Dr. Siegel would have testified that petitioner "could not return to her date of injury employment because of restrictions he would impose notwithstanding the fact that he would not assign a ratable permanent impairment" to her. The ALJ also noted that the case had been "decided on what is the 'worse [sic] case' scenario from the carrier's point of view," that is assuming "Dr. Siegel would state that while [petitioner] does not have a ratable impairment, there are restrictions he would impose on her which would preclude her from returning to her date of injury work." Referring to his November 1 letter, the ALJ again concluded that "*Tsosie* governs and that even if Dr. Siegel were to testify in the way [petitioner's] counsel believes he would, it would not be sufficient if credited to establish an unscheduled permanent disability." Thus, the ALJ ruled that petitioner "failed to sustain her burden of proof" on that claim.

¶ 10 In her request for review, petitioner argued, *inter alia*, there was no evidentiary basis for the ALJ's understanding, set forth in his November 1 letter and incorporated by reference in his award, that Dr. Siegel would testify the AMA *Guides* applied and would result in no permanent impairment rating for her. In his decision upon review, the ALJ

affirmed the award and entered supplemental findings, stating that because he had not heard from either party after they submitted their memoranda in October or after his letter of November 1, he reasonably concluded "all were in agreement that the testimony of Dr. Siegel would be superfluous" and that "[a]t no time has [petitioner's] counsel [ ] even suggested that Dr. Siegel would opine that [petitioner] has a ratable impairment." Based on petitioner's own description (in her memorandum) of Dr. Siegel's expected testimony, the ALJ again concluded that *Tsosie* governed and rendered Dr. Siegel's testimony unnecessary. This statutory special action followed.

## DISCUSSION

¶ 11 Our review of the ALJ's findings is limited to whether they are reasonably supported by the evidence, A.R.S. § 23–951; *Carousel Snack Bar v. Industrial Commission*, 156 Ariz. 43, 749 P.2d 1364 (1988), but we review all questions of law de novo. *Fremont Indem. Co. v. Industrial Comm'n*, 182 Ariz. 405, 897 P.2d 707 (App.1995). The parties frame the issues as follows:

1) Whether the ALJ properly exercised his discretion by refusing to subpoena Dr. Siegel; and

2) Whether *Tsosie* applies to the facts of this case and obviates the need for Dr. Siegel's testimony.

¶ 12 In our view, the answer to (2) compels the same answer to (1) and, therefore, controls our disposition of this case. In *Tsosie*, the sole medical witness, claimant's treating physician, testified that claimant had no permanent medical condition and no permanent impairment. In affirming the Commission award finding his condition to be stationary without permanent impairment, this court stated:

A medical finding of permanent impairment, i.e., anatomic or functional loss, is a prerequisite to the legal finding of permanent disability, i.e., reduction in ability to engage in gainful activity. Here, the only medical evidence was that Tsosie has no permanent impairment associated with the industrial injury and, thus, the ALJ was

correct in awarding no permanent disability. Tsosie's contention that the imposition of permanent work restrictions is tantamount to a finding of permanent impairment is unsupported by any authority.

*Tsosie*, 183 Ariz. at 541–42, 905 P.2d at 550–51 (citations omitted).

¶ 13 Petitioner contends that *Tsosie* is distinguishable, because there the undisputed medical evidence indicated claimant had no permanent medical condition and no permanent impairment, whereas here the record does not reflect "whether Dr. Siegel would testify that there was a permanent *medical condition* attributable to [her] industrial injury which accompanied his recommendations for permanent restrictions." Based on that distinction, petitioner further asserts that Dr. Siegel's testimony was material and necessary for purposes of evaluating her permanent impairment claim and could have supported that claim, even if the AMA *Guides* apply to her condition and result in no ratable permanent impairment. Finally, relying primarily on *Cassey v. Industrial Commission*, 152 Ariz. 280, 731 P.2d 645 (App.1987), and *Hunter v. Industrial Commission*, 130 Ariz. 59, 633 P.2d 1052 (App. 1981), petitioner argues that if a claimant "is precluded from returning to work as a result of a condition related to his industrial injury," as she expected Dr. Siegel to testify, "then [the claimant] has proved the existence of permanent disability as a matter of law."

¶ 14 In contrast, respondents maintain that *Tsosie* "requires evidence of a permanent impairment as a prerequisite to the submission of any further evidence regarding an inability to return to date of injury employment," and that "[p]roof of permanent impairment must precede evidence regarding return to work as long as the claimant's situation is adequately covered by the AMA Guides." Based on two office conferences with Dr. Siegel, which petitioner's counsel also attended, respondents "believe[ ]" he would have testified that "the AMA Guides do apply to the Petitioner's situation, and do not result in a finding of permanent impairment." Consequently, respondents argue, Dr. Siegel's testimony would have added nothing because it could not have supported a finding of permanent impairment, regardless of petitioner's alleged inability to return to date of injury employment due to an industrially-related medical condition.

■ ¶ 15 Both sides' contentions are somewhat off the mark. The cases petitioner relies on do not support her proposition that inability to return to date of injury employment, in and of itself, establishes a permanent impairment, regardless of the applicability of, and lack of any ratable permanent impairment under, the *Guides*. Conversely, as petitioner correctly points out, *Tsosie* is not dispositive here, because our opinion in that case did not even address the *Guides* or their role in assessing and limiting findings of permanent impairment.

■ ¶ 16 *Simpson v. Industrial Commission*, 189 Ariz. 340, 942 P.2d 1172 (App. 1997), issued since *Tsosie* and after the Commission proceedings had been concluded in this matter, is more helpful to us in determining the current state of the law and applying it to the issues raised here. In setting aside an award finding the claimant's injury medically stationary without permanent disability, the court held in *Simpson* that "disabling pain resulting from an industrial injury is compensable, even though the degree of impairment may not be ratable pursuant to the *Guides*." *Id.* at 341–42, 942 P.2d at 1173–74. In so holding, the court concluded that the *Guides* do not "provide the exclusive means for evaluating permanent impairment attributable to persistent residual pain," *id.* at 341, 942 P.2d at 1173, or purport to furnish an exhaustive or exclusive methodology for rating "the entire spectrum of disabling pain," *id.* at 345, 942 P.2d at 1177, even though the *Guides* currently provide for the rating of chronic pain. As the court stated:

[I]mpairments "should" be rated under the *Guides*, "if applicable." Arizona courts, however, have repeatedly held that "[t]he AMA Guides are not to be blindly applied regardless of a claimant's actual physical condition." When the *Guides* do not cover, or do not permit accurate assessment of, a claimant's impairment, that does not mean that the impairment is not compensable. It means rather that the impairment may be established by other means.

*Id.* at 344, 942 P.2d at 1176 (citations omitted).

¶ 17 The claimant in *Simpson* contended he could establish a permanent impairment based on "medical testimony that his symptoms of pain, though unratable under the *Guides,* preclude him from returning to his date-of-injury employment." *Id.* at 344, 942 P.2d at 1176. After discussing *Cassey* and *Smith v. Industrial Commission,* 113 Ariz. 304, 552 P.2d 1198 (1976), the court found sufficient evidence to establish permanent impairment because "the *Guides* were inapplicable in this case" and "[t]estimony from both medical experts established that Simpson's condition is medically stationary, that he suffers from industrially-related residual pain, and that his pain precludes his return to [date of injury work]." *Simpson,* 189 Ariz. at 346, 942 P.2d at 1178.

■ ¶ 18 We agree with the legal principles set forth in *Simpson* and do not find them inconsistent with *Tsosie,* which respondents and the ALJ interpreted and applied too broadly. In *Tsosie,* unlike this case, we had the benefit of a fully developed record, which included the testimony of claimant's treating physician negating any permanent medical condition or permanent impairment. Respondents place undue emphasis on this court's rejection, for lack of supporting authority, of "Tsosie's contention that the imposition of permanent work restrictions is tantamount to a finding of permanent impairment...." *Tsosie,* 183 Ariz. at 542, 905 P.2d at 551. That statement only meant that inability to return to date of injury employment due to an industrially-related medical condition and concomitant work restrictions does not automatically or necessarily establish a permanent impairment as a matter of law. Thus, we reject petitioner's contention to the contrary. We did not say, nor did we mean to suggest, that such inability is irrelevant or may not be considered as a factor in assessing the existence and degree of any permanent impairment, at least when the *Guides* do not cover or permit accurate assessment of a claimant's impairment. In fact, the pertinent Arizona decisions say just the opposite. *See, e.g., Smith; Simpson; Cassey,* 152 Ariz. at 281, 283, 731 P.2d at

646, 648 ("inability to return to work because of industrially-related pain established permanent impairment" when claimant's injury was not ratable under the *Guides* or under any other established criteria; claimant may establish, independent of the *Guides,* that disabling pain constitutes a permanent impairment "if he shows that the pain is caused by his industrial injury and results in his permanent inability to return to his former work"); *Hunter.*

■ ¶ 19 In addition, respondents' assertion that the *Guides,* if applicable, foreclose any other evidence of or means for assessing permanent impairment is inconsistent with Arizona case law. *See, e.g., Slover Masonry, Inc. v. Industrial Comm'n,* 158 Ariz. 131, 136, 761 P.2d 1035, 1040 (1988) ("If an injury has resulted in a functional impairment not adequately reflected by clinical measurement under the AMA Guides, then an ALJ must consider impact on job performance."); *W.A. Krueger Co. v. Industrial Comm'n,* 150 Ariz. 66, 68, 722 P.2d 234, 236 (1986), *quoting Gomez v. Industrial Comm'n,* 148 Ariz. 565, 569, 716 P.2d 22, 26 (1986) ("The AMA Guides are not to be blindly applied regardless of a claimant's actual physical condition. Rather, their purpose is to serve as a *guideline* in rating an impairment and are valid when the stated percentage 'truly reflects the claimant's loss.' "); *Gomez,* 148 Ariz. at 569, 716 P.2d at 26 ("Where the ALJ finds that the *Guides* do not provide a fair, accurate measure of the degree of impairment, he or she must turn to other factors.... Effect on job performance is one such factor."). *See also Cavco Industries v. Industrial Comm'n,* 129 Ariz. 429, 631 P.2d 1087 (1981); *Adams v. Industrial Comm'n,* 113 Ariz. 294, 552 P.2d 764 (1976); *Cassey.*

■ ¶ 20 Thus, when "the evidence establishes that the Guides do not 'truly reflect the claimant's loss' or where the medical evidence is in conflict, the ALJ may use his discretion and make findings independent of the Guides' recommendations." *W.A. Krueger,* 150 Ariz. at 68, 722 P.2d at 236, *quoting Gomez,* 148 Ariz. at 569, 716 P.2d at 26. *See also Slover Masonry.* When there is no dispute or when the credible medical evidence establishes that the *Guides* cover and permit

a fair and accurate assessment of a claimant's condition and alleged impairment, however, the impairment "must be rated, if at all, under the AMA guidelines." *Desert Insulations, Inc. v. Industrial Comm'n,* 134 Ariz. 148, 152, 654 P.2d 296, 300 (App.1982). *See also Adams,* 113 Ariz. at 295–96, 552 P.2d at 765–66 (holding that "the AMA Guides apply exclusively to the evaluation of permanent impairment to the extent that the AMA Guides cover the specific impairment and the percentage thereof").

¶ 21  Applying the foregoing principles to this case, we first note that most of the relevant cases involved various residual pain syndromes. *See, e.g., Smith; Simpson; Cassey.* Here, the specific nature of petitioner's allegedly permanent medical condition is not clear. Although she describes her condition as "myofascial pain syndrome," and another doctor may have alluded to that, none of Dr. Siegel's records mention any such syndrome or diagnosis. When Dr. Siegel last saw petitioner in April 1996, however, he noted she was "continuing to have pain in her right wrist." Similarly, petitioner testified that her forearm and wrist pain had not improved since June 1994, despite subsequent bilateral wrist surgery, and described her symptoms at the time of the hearing as "pain in [her] head, neck and shoulders, in the right wrist, forearm, both top and bottom, and the left wrist and forearm."

¶ 22  Assuming petitioner can prove she has a permanent medical condition, the record does not clearly establish that the *Guides* "cover" and "permit accurate assessment of" her alleged impairment. *Simpson,* 189 Ariz. at 344, 942 P.2d at 1176.[4]  Although Dr. Siegel's office records from November 1995 and January 1996 indicated petitioner did not have a ratable permanent impairment, he later noted that she was "continuing to have pain in her right wrist" and considered her

partially disabled from her regular occupation. In short, Dr. Siegel's expected testimony is largely unknown as to the nature and extent of petitioner's industrial injury; her current symptoms and medical condition and their permanency and causal relationship, if any, to the industrial injury; the nature and extent of any permanent restrictions placed on petitioner affecting her ability to return to date of injury employment; and whether the AMA *Guides* or other established criteria cover and permit accurate assessment of petitioner's condition and alleged impairment.

¶ 23  Respondents emphasize the acknowledgement in petitioner's memorandum, filed in October 1996, that Dr. Siegel "will not testify that she has a permanent impairment pursuant to the AMA *Guides* or any other current standard of impairment evaluation," and the ALJ's understanding expressed in his November 1 letter that "Dr. Siegel would testify that he believes that the AMA Guides would be applicable to [petitioner's] situation but that when applied they would result in no permanent impairment rating for her."[5]  Notwithstanding that acknowledgement and understanding, the record does not indicate whether the *Guides* "permit accurate assessment" of petitioner's condition and alleged impairment or what Dr. Siegel's testimony on that point may have been. *Simpson,* 189 Ariz. at 344, 942 P.2d at 1176. If petitioner presents evidence that the *Guides* do not cover or permit accurate assessment of her impairment, then she would be "entitled to introduce other evidence to meet [her] burden" of proving an industrially-related permanent impairment. *Simpson,* 189 Ariz. at 346, 942 P.2d at 1178. Such evidence may include petitioner's alleged inability to return to date of injury work due to her industrially-related medical condition and restrictions. Of course, the ALJ would have to resolve any conflicts in

---

4. Contrary to respondents' contention, Dr. Anderson did not testify "that the AMA Guides do apply to the Petitioner's situation, and do not result in a finding of permanent impairment." Although Dr. Anderson clearly opined in his report and testimony that petitioner has no permanent impairment or disability attributable to the industrial injury, he did not mention the AMA *Guides* at all.

5. Respondents also point out petitioner's lack of objection to the characterization of Dr. Siegel's expected testimony in their memorandum or the ALJ's letter. Although petitioner might have acted sooner, she did object on review, and we do not find her early inaction tantamount to a waiver of her right to present evidence. *See Madison Granite Co. v. Industrial Comm'n,* 138 Ariz. 573, 676 P.2d 1 (App.1983).

the medical evidence bearing on these issues. *Ford v. Industrial Comm'n*, 145 Ariz. 509, 703 P.2d 453 (1985).

¶ 24  We set aside the award on procedural grounds as well. Rule 41, 20 Ariz. Admin. Code R20–5–141(A), provides in pertinent part:

> A request for subpoenas for expert medical witnesses shall be filed at least 20 days prior to the date of the first scheduled hearing. Upon request of the presiding administrative law judge, the party requesting that the subpoena be issued shall present a written statement stating the substance of the testimony expected of the witness. If a party fails to respond to such request by the presiding administrative law judge within five days, the witness shall not be subpoenaed unless the party can show at or before the first scheduled hearing good cause for the failure to respond within the pertinent time limit and that the witness is material and necessary. If such testimony appears to be material and necessary, the presiding administrative law judge shall issue the subpoena.

¶ 25  As noted above, petitioner timely requested that the ALJ issue a subpoena for Dr. Siegel's testimony. The ALJ initially issued the subpoena for a hearing scheduled for November 1996, and did not request petitioner to "present a written statement stating the substance of the testimony expected" from Dr. Siegel. Rule 41(A). Although petitioner's memorandum filed at the ALJ's request arguably fulfilled the purpose of Rule 41, it did not clearly show that Dr. Siegel's requested testimony would be immaterial and unnecessary.[6] *See Reinprecht v. Industrial Comm'n*, 27 Ariz.App. 7, 10, 550 P.2d 654, 657 (1976) (ALJ may refuse to issue subpoena under Rule 41 "only when the requested statement is not forthcoming or where it is clearly shown in the statement itself that the solicited testimony would not be material and necessary"). Moreover, if the ALJ cancelled Dr. Siegel's appearance based on respondents' predictions of his expected testimony, we find that incompatible with Rule 41 and "substantial justice." A.R.S. § 23–941(F).

¶ 26  We recognize that "the Industrial Commission is vested with the sound discretion to regulate and control the witnesses appearing before it, and its award will not be disturbed by an appellate court for mere procedural errors." *Travelers Ins. Co. v. Industrial Comm'n*, 18 Ariz.App. 28, 30, 499 P.2d 759, 761 (1972). Nonetheless, the right to present witnesses on one's own behalf, although certainly not absolute, is a fundamental tenent of due process to which an ALJ generally must adhere in order to "achieve substantial justice." A.R.S. § 23–941(F); *Horan v. Industrial Comm'n*, 167 Ariz. 322, 806 P.2d 911 (App.1991); *K Mart Corp. v. Industrial Comm'n*, 139 Ariz. 536, 679 P.2d 559 (App.1984); *Cash v. Industrial Comm'n*, 27 Ariz.App. 526, 556 P.2d 827 (1976); cf. *Ohlmaier v. Industrial Comm'n*, 161 Ariz. 113, 116, 776 P.2d 791, 794 (1989) ("A claimant has an absolute right to have an opportunity to present his case fully and freely before an impartial tribunal, i.e., to have his day in court."). We are unaware of any cases, nor have respondents cited any, in which a claimant has been precluded from calling his or her only treating physician to testify on a permanent impairment claim. Under the circumstances, the ALJ erred in disallowing Dr. Siegel's testimony. *See Reinprecht.*

¶ 27  Although it may be true, as respondents contend, that petitioner "has no medical evidence of permanent impairment and will not be able to produce any," the record does not clearly or necessarily lead to that conclusion. Therefore, petitioner should have an opportunity to prove her claim through her own treating physician in a contested evidentiary hearing. The award is set aside.

WILLIAM E. DRUKE, Chief Judge, and M. JAN FLÓREZ, Judge, concur.

---

**6.** Unfortunately, as petitioner notes, the parties did not present either the ALJ or this court with "stipulated facts" upon which a reasoned legal analysis and conclusion could be based. Moreover, the parties' predictions of what Dr. Siegel was "prepared to do" or "expected to" testify to are partially based on matters outside the record and largely speculative, argumentative, and inconclusive.