243 P.3d 604

Jesus GUTIERREZ, Petitioner,

v.

The INDUSTRIAL COMMISSION
of Arizona, Respondent,

Masterson & Clark Framing, Inc.,
Respondent Employer,

SCF Arizona, Respondent Carrier.

No. 1 CA–IC 09–0040.

Court of Appeals of Arizona,
Division 1, Department A.

July 8, 2010.

Cecil A. Edwards, Jr., Phoenix, Attorney for Petitioner Employee.

Andrew F. Wade, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

James B. Stabler, Chief Counsel, SCF Arizona by Deborah E. Mittelman, Mark A. Kendall, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

WINTHROP, Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review that found the petitioner employee ("Claimant") medically stationary with no permanent impairment. Claimant raises the following issues on appeal:

(1) whether Arizona Administrative Code ("A.A.C.") R20–5–113(B) ("Rule 113(B)") and specifically the phrase "the most recent edition" refers to the Fifth Edition of the American Medical Association ("AMA") Guides to the Evaluation of Permanent Impairment ("Guides"), which was in effect when the rule was adopted;

(2) whether the ICA unlawfully delegated its rule-making authority to the AMA when it permitted Claimant's permanent impairment to be rated according to the Sixth Edition of the AMA Guides; and

(3) whether the ICA's use of the Sixth Edition of the AMA Guides violates Article 18, Section 8, of the Arizona Constitution.

We hold that Rule 113(B) refers to the edition of the AMA Guides in effect at the time an injured worker is rated for the existence of permanent impairment, and that this is neither an impermissible delegation of authority nor a violation of Article 18, Section 8, of the Arizona Constitution. Accordingly, we affirm the award and decision upon review.

## I. JURISDICTION AND STANDARD OF REVIEW

¶ 2 This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(2) (2003), 23–951(A) (1995), and Rule 10 of the Arizona Rules of Procedure for Special Actions. In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but we review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App.2003). We consider the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App.2002).

## II. PROCEDURAL AND FACTUAL HISTORY

¶ 3 Claimant was employed by the respondent employer, Masterson & Clark Framing, Incorporated. On April 13, 2007, he was moving a stack of plywood when he experienced an immediate onset of pain in his right lower back. He filed a workers' compensation claim, which was accepted for benefits. He received conservative medical treatment and subsequently was released to return to his regular work with physical restrictions. The respondent carrier, SCF Arizona ("SCF"), then closed the claim with no permanent impairment, and Claimant timely requested a hearing.

¶ 4 Three ICA hearings were held for testimony from Claimant; his treating orthopedic surgeon, Ali Araghi, D.O.; and an independent medical examiner, Kevin S. Ladin, M.D. Following the hearings, the ALJ entered an award finding Claimant's medical condition stationary with no permanent impairment. Claimant timely requested administrative review, and the ALJ summarily affirmed his award. Claimant then brought this timely appeal.

## III. ANALYSIS

¶ 5 When an injured worker's claim is closed with no permanent impairment, he has the burden of proving that his industrially related physical condition is not yet medically stationary, or, in the alternative, that he has sustained a permanent impairment. *See, e.g., Lawler v. Indus. Comm'n,* 24 Ariz.App. 282, 284, 537 P.2d 1340, 1342 (1975); *see also Home Ins. Co. v. Indus. Comm'n,* 23 Ariz. App. 90, 93, 530 P.2d 1123, 1126 (1975) (analyzing the "stationary" concept and distinguishing a temporary impairment from a permanent one). Back and spine injuries typically require expert medical testimony to demonstrate not only the causal connection between a claimant's medical condition and the industrial accident, but also the existence and extent of any permanent impairment. *See W. Bonded Prods. v. Indus. Comm'n,* 132 Ariz. 526, 527–28, 647 P.2d 657, 658–59 (App. 1982).

¶ 6 If the expert medical testimony conflicts, it is the ALJ's duty to resolve the conflict. *See Perry v. Indus. Comm'n,* 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975). In resolving such conflicts, the ALJ may consider the expert witnesses' qualifications, backgrounds, and experience in diagnosing and treating the type of injury incurred. *See Carousel Snack Bar v. Indus. Comm'n,* 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988).

¶ 7 In this case, to the extent there was a medical conflict, the ALJ resolved it in favor of Dr. Ladin's testimony. Dr. Ladin is board certified in physical medicine and rehabilitation, in pain management, and as an independent medical examiner. He testified that he examined Claimant on January 16, 2008, obtained a medical history, including the industrial injury, and reviewed Claimant's industrially related medical records. At the time of this evaluation, Claimant complained of persistent severe low back pain that radiated to his right buttock and thigh. During his examination, Dr. Ladin noted the presence of certain physical findings, known as "Waddell signs," which may be indicative of secondary gain and/or malingering.[1] He testified that Claimant's neurological examination was normal, and there were no significant objective orthopedic findings.

¶ 8 Dr. Ladin also had reviewed Claimant's MRI films. The doctor testified that while there was a disc protrusion at L5–S1, to the right of mid-line, this finding alone was not significant. It was Dr. Ladin's opinion that Claimant sustained a back strain in the industrial episode, and he had no ratable permanent impairment. Dr. Ladin explained that the bulging disc did not appear to result from trauma, but instead was indicative of degenerative disc disease. The doctor testified that Claimant could return to his regular

---

1. The use and significance of Waddell signs is controversial, leading one peer-reviewed medical journal to recently conclude, based upon a review of the literature, that "there [is] little evidence for the claims of an association between Waddell signs and malingering." D.A. Fishbain et al., *Is There a Relationship Between Nonorganic Physical Findings (Waddell Signs) and Secondary Gain/Malingering?,* Clin. J. Pain, Nov.-Dec. 2004, § 20(6), at 399–408 (located at www.ncbi.nlm.nih.gov/pubmed/15502683).

work with no industrially related physical restrictions.

¶ 9 Claimant argues that Dr. Ladin's testimony is legally insufficient to support the award because the doctor relied on the Sixth Edition of the AMA Guides when he rated Claimant's permanent impairment. In contrast, Claimant's treating physician, Dr. Araghi, rated Claimant with a five percent permanent impairment based on the Fifth Edition of the AMA Guides.

¶ 10 It was Dr. Araghi's opinion that Claimant had a preexisting herniated L5–S1 disc that had been aggravated by the industrial injury, resulting in a lumbar radiculopathy that had since resolved. Dr. Araghi testified that, pursuant to the Fifth Edition of the AMA Guides, a resolved radiculopathy constitutes a permanent impairment. Although the doctor had not reviewed the Sixth Edition of the AMA Guides, he did not believe the permanent impairment rating for such condition had been changed. In fact, however, the Sixth Edition of the AMA Guides eliminates the permanent impairment rating for a resolved radiculopathy.

■ ¶ 11 Claimant asserts that Rule 113(B) necessarily refers to the Fifth Edition of the AMA Guides, published in 2000, because that was the edition in effect at the time the current version of the rule was adopted on August 17, 2001. The rule provides, in pertinent part:

When a physician discharges a claimant from treatment, the physician:

1. Shall determine whether the claimant has sustained any impairment of function resulting from the industrial injury. The physician should rate the percentage of impairment using the standards for the evaluation of permanent impairment as published by *the most recent edition* of the American Medical Association in Guides to the Evaluation of Permanent Impairment, if applicable[.]

A.A.C. R20–5–113(B) (emphasis added).

¶ 12 The prior version of Rule 113(B),[2] which was in effect from March 1, 1987, until August 17, 2001, provided:

Upon discharge from treatment the physician shall report any rating of any impairment of function as the result of the injury. Any rating of the percentage of impairment should be in accordance with standards for the evaluation of permanent impairment as published by the American Medical Association in Guides to the Evaluation of Permanent Impairment, if applicable. It shall include a clinical report in sufficient detail to support the percentage ratings assigned.

7 Ariz. Admin. Reg. 25 (Jan. 5, 2001).

¶ 13 The prior version of the rule is substantively the same as the version of the rule adopted in 2001, except that it lacks the phrase "the most recent edition." At the time the prior rule was adopted in 1987, the Second Edition of the AMA Guides, published in 1984, was in effect. During the tenure of the prior version of Rule 113(B), the Third Edition of the Guides was published in 1988, the Third Edition (Revised) was published in 1990, and the Fourth Edition was published in 1993. As each subsequent edition of the Guides was published, it became the one used in Arizona to evaluate and rate permanent impairment. *See generally Arizona Workers' Compensation Handbook ("Handbook")* § 7.2.1, at 7–1 to–2; 2007 Supp. at 7–1 (Ray J. Davis et al. eds., 1992 & Supp.2007). The current version of Rule 113(B) recognizes this unstated proposition by its addition of the phrase "the most recent edition."

¶ 14 The AMA adopted the Sixth Edition of the AMA Guides in December 2007. A stated purpose of the Sixth Edition is to employ the latest evidence in diagnostic and clinical tests and the latest scientific research and evolving medical opinion provided by nationally and internationally recognized experts. *See www.ama-assn.org.* At least ten states, including New Mexico, Wyoming, and Montana use the Sixth Edition to rate permanent impairment. *See www.impairment. com/Use_of_AMA_Guides.htm.* Although Claimant argues that Arizona should be guided by decisions on this issue from North Dakota and West Virginia, we disagree. North Dakota administratively requires use of the Fifth Edition, *see* N.D. Admin. Code

---

**2.** The rule was previously found at A.A.C. R20–5–113(D).

§ 92–01–02–25(2) (2009), and West Virginia administratively requires use of the Fourth Edition. *See generally* W. Va.Code R. § 85–20–3.8 (2006); *see also Simpson v. W. Va. Office of the Ins. Comm'r*, 223 W.Va. 495, 678 S.E.2d 1, 6 n. 4 (2009) (citing W. Va.Code R. § 85–20–65.1 (2004)).[3] Accordingly, we conclude that the phrase "the most recent edition" means the edition in effect at the time an injured worker's medical condition is evaluated for the existence of ratable permanent impairment.

¶ 15 Claimant alternatively argues that, even assuming the language in Rule 113(B) is interpreted to authorize use of the Sixth Edition, such authorization represents an unlawful delegation to the AMA of the ICA's authority to rate permanent impairment. The ICA is authorized to adopt rules regulating the presentation of claims. A.R.S. § 23–921(B) (1995); *Hershkowitz v. Ariz. Highway Dep't*, 56 Ariz. 494, 496, 109 P.2d 46, 47 (1941), *overruled on other grounds*, *Ross v. Indus. Comm'n*, 82 Ariz. 9, 12, 307 P.2d 612, 614 (1957). This power is not unlimited; administrative bodies may make rules and regulations supplementing legislation for its complete operation and enforcement *as long as* such rules and regulations are within the standards set forth in the legislative act. *Haggard v. Indus. Comm'n*, 71 Ariz. 91, 100, 223 P.2d 915, 921–22 (1950).

¶ 16 Rule 113(B) is not an unlawful delegation of authority to the AMA because, although use of the AMA Guides is generally required, the physician rating the impairment retains some discretion whether to use the Guides. In other words, Arizona courts recognize that a physician may rely on the AMA Guides if the physician finds them to be an appropriate measure of impairment, but if not, the physician may use other appropriate rating criteria. *See generally Handbook* § 7.2.1.2, at 7–2; *see also Simpson v. Indus. Comm'n*, 189 Ariz. 340, 344–45, 942 P.2d 1172, 1176–77 (App.1997) (recognizing that, if the Guides do not cover or permit an accurate assessment of a claimant's impairment, the impairment may be established by other means). We further observe that Claimant's argument about an unlawful delegation of authority was expressly considered and rejected by the Supreme Court of New Mexico in *Madrid v. St. Joseph Hospital*, 122 N.M. 524, 928 P.2d 250, 256–59, ¶¶ 11–23 (1996), and we find that court's reasoning to be thoughtful and persuasive, and accordingly adopt it here:

It is impractical to expect our Legislature to establish standards for evaluating physical impairment in workers' compensation claims. The New Mexico Legislature could have concluded that it lacked the resources to develop independent standards, opting instead to utilize the standards established by a highly respected entity that possessed the expertise for such an undertaking. Prohibiting the Legislature from adopting the standards developed by experts within a rapidly changing medical specialty would obstruct the Workers' Compensation Administration's efforts to provide accurate evaluations of impairment.

In addition, new developments in medical science relevant to evaluating impairments demand periodic modifications of the standard adopted by Section 24.[4] The AMA Guide is periodically updated to encompass these new developments. AMA Guide, *supra*, at 1. Periodic revisions of the standard will not transform an otherwise constitutional and non-delegatory statutory provision into an unconstitutional delegation of legislative power. Where a standard is periodically updated because of new scientific developments recognized by eminent professionals interested in maintaining high standards in science, the standard may still be adopted by the Legislature. *See, e.g.*, [*State v.*] *Wakeen* [263 Wis. 401], 57 N.W.2d [364,] 369 [ (1953) ].

. . . .

In light of all the relevant considerations—the eminence of the medical professionals who compile the AMA Guide, the

---

3. Further, New Mexico's rule is most similar to Arizona's because it also requires use of "the most recent edition" of the AMA Guides. N.M. Stat. Ann. § 52–1–24(A) (West 2010).

4. *See* N.M. Stat. Ann. § 52–1–24.

complexity of the issue of impairment, the number of jurisdictions that have adopted the AMA Guide or similar publications, the practical necessity of adopting this mutable standard, the discretionary component of using the AMA Guide, and the significance of the AMA Guide outside of the statutory reference—we find no delegation of legislative authority in Section 24.

*Id.* at 258–59, ¶¶ 20–23 (footnote added).[5]

■ ¶ 17 Claimant also argues that use of the Sixth Edition of the AMA Guides to rate his impairment had the effect of potentially reducing the compensation that he might otherwise be entitled to receive, which he maintains is a violation of Article 18, Section 8, of the Arizona Constitution. That section, entitled "Workmen's compensation law," states in pertinent part as follows:

> The percentages and amounts of compensation provided in House Bill No. 227[6] enacted by the Seventh Legislature of the State of Arizona, shall never be reduced ... except by initiated or referred measure as provided by this Constitution.

Ariz. Const. art. 18, § 8.

¶ 18 Claimant places reliance for his argument on *Adkins v. Industrial Commission,* 95 Ariz. 239, 244–46, 389 P.2d 118, 121–22 (1964), in which our supreme court found unconstitutional a statutory revision allowing for change of an award of compensation only upon a showing of a subsequent change in the physical condition of a claimant. The court concluded that the revised statute "has the effect of decreasing the amount due a claimant under the prior act [which allowed for a showing of changed earning capacity *or* a change in the claimant's physical condition] by withdrawing from the Commission the right to consider matters affecting the workman's earning capacity after a nine-month period." *Id.* at 245, 389 P.2d at 121. Consequently, the challenged provision violated Article 18, Section 8, of the Arizona Constitution because "it reduces the amount of compensation due in all those cases where the claimant's earning capacity rather than his physical condition is the determining factor." *Id.* at 246, 389 P.2d at 122.

¶ 19 We find *Adkins* distinguishable from this case. In *Adkins,* the legislature attempted to limit the ability of a claimant to change an award of compensation by requiring that the claimant's petition for rearrangement be accompanied by a subsequent change in the claimant's physical condition affecting his or her earning capacity. Thus, the legislature did "precisely what the legislature cannot do"—it enacted a statutory revision that removed an avenue of recovery formerly available to a claimant, and the change had both the intent and effect of

---

5. We also find unavailing Claimant's citation to *State v. Williams,* 119 Ariz. 595, 583 P.2d 251 (1978). In *Williams,* the State appealed the superior court's dismissal of criminal charges against a defendant based in part on the court's holding that the statutory provision at issue provided for an unconstitutional delegation of legislative authority to define criminal behavior to Congress, various federal agencies, and the Arizona Department of Economic Security ("ADES"). *Id.* at 597, 583 P.2d at 253. The Arizona Supreme Court, while recognizing "the principle that the Legislature may not completely delegate its law making power to another governmental agency," also noted "the increasing trend in the cases to uphold certain adequately circumscribed delegations of power." *Id.* at 598, 583 P.2d at 254. Our supreme court then recognized that "it is universally held that an incorporation by state statute of rules, regulations, and statutes of federal bodies to be promulgated subsequent to the enactment of the state statute constitutes an unlawful delegation of legislative power" because, "[s]ince the Legislature exercis-

es absolutely no control over Congress or its agencies, the adoption as state law of those bodies' prospective enactments is viewed as a complete abdication of legislative power." *Id.* at 598–99, 583 P.2d at 254–55 (citations omitted). The supreme court, however, concluded that the reasoning did not apply to the incorporation of present and future rules and regulations of state agencies, such as ADES, into the state's criminal law. *Id.* at 599, 583 P.2d at 255. Consequently, the court reversed the superior court's ruling, directing in part that the prosecutor could support the criminal charges with proof of violations of the state agency's regulations promulgated both prior and subsequent to the passage of the criminal statute. *Id.* We view the administrative adoption of "the most recent edition" of the AMA Guides as being more analogous to the adoption of a state agency's present and future rules and regulations than the adoption of a future act of Congress, which is a legislative body separate from our legislature.

6. Laws 1925, Ch. 83.

reducing the amount of compensation to which a claimant was previously entitled. *Id.*

¶ 20 By contrast, in this case, the ICA's use of the Sixth Edition of the AMA Guides under Rule 113(B) has neither the intent nor the effect of categorically depriving Claimant of a class of benefits to which he was previously entitled. Even if the impairment rating in the Fifth Edition of the AMA Guides were utilized, its utilization would not guarantee Claimant an award of permanent disability benefits. If an impairment is awarded, it simply allows a claimant with a non-scheduled injury to proceed to a loss of earning capacity determination.[7] *See Cassey v. Indus. Comm'n,* 152 Ariz. 280, 283, 731 P.2d 645, 648 (App.1987) (stating that determination of a claimant's loss of earning capacity is a bifurcated procedure requiring the claimant to first establish impairment and second establish that the impairment diminished his earning capacity); *see also* A.R.S. § 23–1047(A) (Supp.2009) (stating that once the claimant's medical condition becomes stationary, the ICA shall determine *if* a permanent disability award is appropriate). Further, Arizona courts have recognized that a numerical impairment rating is not necessary to support an entitlement to permanent disability benefits. *See, e.g., Carousel Snack Bar,* 156 Ariz. at 45–46, 749 P.2d at 1366–67. Finally, although the Sixth Edition of the AMA Guides no longer contains a numerical impairment rating for a resolved radiculopathy, a claimant's treating physician could still rate an impairment by other appropriate means according to Rule 113(B).[8]

## IV. CONCLUSION

¶ 21 For all of the foregoing reasons, the award and decision upon review are affirmed.

7. *See* A.R.S. § 23–1044(C) (Supp.2009) ("In cases not enumerated in subsection B of this section, if the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between the employee's average monthly wages before the accident and the amount which represents the employee's reduced monthly earning capacity resulting from the disability. . . .").

CONCURRING: MAURICE PORTLEY, Presiding Judge, and MARGARET H. DOWNIE, Judge.

8. *Cf.* 7 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 127.08[3], at 127–44 (2009) (stating that the preferred practice should be to use medical books, treatises, and the AMA Guides as tools, and not as ends in themselves, and a medical expert's personal experience and judgment play an important role in the resolution of disability issues).